No. 14,312.

CLINE *v.* ESTATE OF HERON ET AL.
(84 P. [2d] 833)

Decided November 7, 1938.   Rehearing denied December 5, 1938.

Mr. Chas. E. Friend, for plaintiff in error.

Mr. Nicholas Lakusta, Mr. Forrest C. Northcutt, for defendants in error.

*En Banc.*

Mr. Justice Bakke delivered the opinion of the court.

Plaintiff in error, who was plaintiff below, sued for an accounting, and specific performance of a contract to purchase certain farm lands in Adams and Arapahoe counties and a house in Denver, under an alleged option in a lease. Upon issues joined and a trial to the court without a jury, judgment was entered January 22, 1938, in favor of the defendants on their cross complaint, and for damages in the sum of $3,200. Supersedeas was granted, and reversal is asked on a writ of error. Reference will be made to the parties as they appeared in the trial court or by name.

For a number of years prior to the situation which gave rise to the litigation, William L. Cline, father of the plaintiff, and Dr. John H. Heron had been engaged in joint ventures in real estate and general farming operations, with Heron furnishing most of the capital. During the fall of 1928, after several crop failures, Cline became financially embarrassed and gave Dr. Heron notes and

deeds of trust totaling $61,800 to secure his indebtedness to the latter. Cline, after making some payments, defaulted and foreclosure was had under all of the deeds of trust, and trustee's deeds issued to Heron on various dates, the last being January 20, 1933, for a face consideration of $41,646.77.

On January 10, 1933, Heron executed a lease of the same premises to John R. Cline for three and one-half years, under the terms of which Heron was to receive a quarter of the crops produced. This lease, in addition to the usual provisions, contained the following: "8th: Lessee shall have the right and option to purchase said property on or before July 10, 1936, by paying to the lessor in cash an amount representing the actual cash investment of the lessor, including principal, accrued interest and taxes or other items paid by the Lessor, including interest on above at the rate of five (5) per cent per annum; Lessee to receive as credits monies paid to Lessor as rents from this property, provided he exercises his rights under this option. Said option must be fully complied with as to all properties herein described, a partial purchase not being permissible hereunder."

On March 19, 1936, the following notation was written by Mrs. Heron at the bottom of page 1 of the original lease. "March 19, 1936. I hereby extend this lease to August 15, 1937." This was signed by John Heron and witnessed by Mrs. John H. Heron. John H. Heron died testate in October, 1936, and Mrs. Heron was named executrix of his estate.

On August 12, 1937, John R. Cline sent the following notice to Mrs. Heron:

"Notice of exercise of option.

"Denver, Colorado
"August 12, 1937

"To MARY OR MAY E. HERON, EXECUTRIX OF THE ESTATE OF DR. JOHN H. HERON, DECEASED:

"You will please take notice that the undersigned, John

R. Cline, does hereby exercise his right and option to purchase the property and real estate described in the certain farm lease and contract between John H. Heron (now deceased) and John R. Cline, the undersigned, which contract was dated January 10, 1933; the undersigned does hereby give notice that he is ready, able and willing to comply with said option 'By paying to the lessor in cash an amount representing the actual cash investment of the lessor, including principal, accrued interest and taxes, or other items paid by the lessor, including interest on the above at the rate of five per cent (5%) per annum; lessee to receive as credit moneys paid to lessor as rents from this property.'

"Please be further advised that the undersigned stands ready, able and willing to pay the amounts due and owing by him according to said contract, and in this connection he gives notice of the following conditions which he believes to be just, upon which said payment is to be made.

"1. Inasmuch as John H. Heron is dead, and his estate is now being administered in the county court of the City and County of Denver, he urges that his attorney, Chas. E. Friend, of 408 Central Savings Bank Building, Denver, Colorado. Telephone Main 0411, be given notice of any and all further steps taken in said estate in order to comply with said contract, and furnishing to undersigned a proper executor's deed to said properties.

"2. He asks that an adequate accounting be had between the parties hereto wherein the evidences of all payments made by or on behalf of the lessor, and all evidences of credit due the undersigned be produced by each of the parties and representatives or attorneys, for the inspection of all parties concerned, and the proper checking of said accounts.

"3. That for this purpose a friendly suit be instituted and an accounting had with a judgment or decree of court, establishing the amount or amounts due under said contract.

"This notice of acceptance and exercise of said option in the contract mentioned is given the executrix alone for lack of proper information concerning the heirs of deceased, and proper time within which to communicate with the legal representatives of said estate.

"Dated at Denver, Colorado, this 12th day of August, 1937.

"John R. Cline."

This notice was duly served on Mrs. Heron as appears from the affidavit of service attached thereto.

Without directing attention to any specific assignment of error, we will accept as the basis of our consideration plaintiff's own statement: "The record herein may seem large, but the issues are exceedingly simple. They involve the construction of paragraph eight of a [the] lease."

The trial court found that the extension of the lease to August 15, 1937, also extended the option to the same date, but found plaintiff had failed to comply with the terms of the option. Counsel for defendants accept these findings and seem content to rest their case on established rule in this jurisdiction presented by their interrogation: "Will the findings of the trial court on fact issues be set aside where they are supported by sufficient competent evidence?"

An analysis of the option discloses these conditions: 1. Payment in cash of an amount representing the actual cash investment of Heron. 2. Lessee to receive certain credits if he exercises his option by full compliance.

It is obvious from the language used that the giving of credits was to be a condition subsequent.

On November 21, 1936, a statement was prepared of the "account of Dr. John H. Heron with John R. Cline" by the attorney for the Heron estate showing a balance due the estate of $44,997.13, at the bottom of which appears the following:

"The above and foregoing account approved and ac-

cepted by the undersigned. It is understood and agreed that the said sum of $44,997.13 represents the cash investment of Dr. John H. Heron, including principal, accrued interest, taxes and other expenses, less credits for monies paid as rent by John R. Cline to Dr. John H. Heron. All as of the first day of September, 1936, except that the rent on premises known as 2557 Cherry Street was paid to the 10th day of September, 1936. It is further understood and agreed that the said sum of $44,997.13 represents the amount that the said John R. Cline would have had to pay on the First day of September, 1936, to Dr. John H. Heron in the event he would have then decided to exercise his right and option to purchase the land and residence property in accordance with the provisions contained in the lease and option agreement between the said parties dated the 10th day of January, 1933.

"In witness whereof, the said parties have hereunto subscribed their names, and signed a duplicate, this 21st day of November, 1936.

"Mrs. Mary E. Heron (Seal)

"John R. Cline (Seal)"

After retaining this statement for over two months, plaintiff called the attorney's attention to some minor items on the account, which were promptly adjusted to plaintiff's satisfaction.

August 10, 1937, W. L. Cline asked the attorney to prepare a statement of account to August 15, 1937, which was furnished, showing a balance due at that date of $47,722.21. As to this statement the attorney testified: "Mr. Cline looked it over and never made any objection to any item."

Meanwhile, and on July 12, 1937, the attorney for the estate had written the following letter (description of premises omitted) to John R. Cline and dispatched same (also a copy thereof to Rev. W. L. Cline) by registered mail and for which a receipt was duly signed and returned:

"July 12, 1937.

"Mr. John R. Cline
"2557 Cherry Street
"Denver
"Colorado.
    "Re: Estate of John H. Heron, Deceased.
"Dear Sir:
    "I am instructed by Mrs. Mary E. Heron, executrix of the last will and testament of John H. Heron, deceased, to write to you that he has definitely decided not to extend the lease and option agreement entered into on the 10th day of January, 1933, by and between the said John H. Heron, as lessor, and you, as lessee, * * *.
    "Therefore, please take notice, that, unless the option to purchase is exercised on or before the 15th day of August, 1937, you are to vacate and surrender the possession and occupancy of all of the above described premises and property to Mrs. Mary E. Heron, as such executrix, on said 15th day of August, 1937.
                    "Very truly yours,
                    "Nicholas Lakusta,
                    "Attorney for Mary E. Heron and
                    for the Estate of John H. Heron,
                    deceased.
"Carbon copy to Rev. W. L. Cline."

Reverting to Cline's "notice of exercise of option" wherein he says: "Please be further advised that the undersigned stands ready, able and willing to pay the amounts due * * *." The remaining language is immaterial because he clearly waived further accounting on the amounts due after accepting the two statements furnished him.

Thus, the only remaining issue, and the controlling one, was Cline's ability to pay. We think in this connection that the trial court would have been justified in ordering a deposit of the amount due as a condition for further delay, but plaintiff was given every opportunity to demonstrate his ability to pay.

At the time Cline received the last statement of account, he told the attorney for the estate that "he had a fairly good chance of getting $17,000, but that would not be enough."

On August 12, 1937, Cline had $1,050.99 in the bank, and on August 14, $5,757. He said he expected to make a loan on the land, which, together with his share in the 1937 wheat crop, would have been sufficient to meet the amount due under the option, but the testimony discloses that the man upon whom he was relying to make this loan tried to obtain the money from one of the Denver banks and failed.

An unsigned contract was introduced in evidence, in which it was recited that one Flader was to loan $29,000 on the land, but W. L. Cline admitted that the contract was not in effect at the time of the trial. When he was asked: "Where is that written offer?" he answered, "I don't know. When I had decided I would ask for an accounting, somehow or other the paper has gone."

The same witness testified that they (the Clines) expected to sell Dr. Heron's one-fourth share, eleven thousand bushels of wheat, which was in the elevator and apply that on the purchase price, and that at the time they sold their interest in the wheat they were owing about $24,000.

Part of plaintiff's theory was that time was not of the essence of the agreement, but Mrs. Heron, the executrix testified, "I had refused to grant it [extension] because I felt it was about time for a woman of my age [80 years] to put her house in order, and that we had carried Mr. Cline a long time."

W. L. Cline in relating his understanding had at the last conference (February 1, 1937) with Mrs. Heron, testified, "Well, I asked * * * about a lease on that land * * * and I told them I would summer fallow it, and if we didn't redeem the land on August 15, we would be willing either to accept the custom price for the work done * * * or * * * go ahead and plant the crop

and give them a fourth  *  *  *.'' Notwithstanding subsequent developments, we believe that this was what the parties actually intended the deal to be. We see no merit in the contention that the ''lease-hold and option rights of plaintiff under exhibit 'A' [the original lease], constitute an extended period of redemption from the foreclosure and this right was properly exercised,'' and it has no support in the record.

There remains to be considered but one other point, and that is plaintiff's contention that this lease was intended only as security; that defendants' remedy was another foreclosure proceeding, and not a cross complaint in ejection and for damages, seeking thus to bring the case within the doctrine of *Fairview Corporation v. American Co.,* 86 Colo. 77, 278 Pac. 800, and *Taylor v. Briggs,* 99 Colo. 89, 60 P. (2d) 1081. This whole contention fails, however, when the intention of the parties, established by their acts, is taken into consideration in connection with the transaction, W. L. Cline's statements as noted above, and the taking of a separate lease by John R. Cline from Heron of a part of the land for coal mining purposes.

We have carefully considered the assignments of error directed to the improper admission of evidence and find them to be without merit. While the trial court was liberal in this behalf, it is apparent that the liberality was mostly in plaintiff's favor and certainly not prejudicial in any event.

We think the whole matter was fairly tried and find no reversible error in the record.

The judgment is affirmed.

Mr. Justice Holland not participating.