Paul M. VOZAR and Sandra J.
Vozar, Appellants,

v.

Richard FRANCIS and Kay
Francis, Appellees.

No. 3173.

Supreme Court of Alaska.

May 26, 1978.

Helen L. Simpson, Anchorage, for appellants.

Edward L. Garnett, Kenai, for appellees.

Before BOOCHEVER, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, J. Pro Tem.

## OPINION

DIMOND, Justice Pro Tem.

Paul and Sandra Vozar, the plaintiffs in the Superior Court, and Richard and Kay Francis, the defendants, executed a document called an "Option to Purchase Agreement." Under its terms, plaintiffs agreed to rent to defendants a certain lot with a house on it in or near Kenai, Alaska, with an option to purchase the property. Payment "of the said property" was to be $250.00 a month including interest at nine percent per annum. The agreement provided that if defendants "abides [sic] by the State of Alaska Uniform Residential Landlord and Tenant Act and desires in either his name or his wifes [sic] name by June 30, 1975 he may request to Owners (plaintiffs) to exercise this Option . . ."

The defendants were to pay all taxes after 1974. Neither party was to allow any encumbrance, such as material, labor or mechanics liens or mortgages, "to encumber the said property at any time." The plaintiffs were to "give Optionee (defendants) a clear title to said property when paid off in full if Optionee elects to exercise this option."

Paragraph 4 of the agreement provided: POSSESSION: Optionee shall, upon execution hereof have the right to enter into possession and use of said property and shall be required to make all repairs and necessary improvements to put and keep premises in a fit and habitable condition, to provide and maintain appropriate receptacles and conveniences for the removal of ashes, garbage, rubbish, and other waste incidental to the occupancy of the dwelling unit and arrange for their removal, and shall be restricted to no more than 2 pets on the premises which shall be tied or confined in some manner within none days of this agreement.

It was further provided that defendants could not sublease or rent the property without the written consent of the plaintiffs.

On or about May 9, 1975, the defendants received a letter from an attorney representing the plaintiffs. The letter was entitled "Notice of Noncompliance With Rental Agreement and Revocation of Option to Purchase." In this document, the defendants were advised that they were in violation of certain terms of the option to purchase agreement. In addition, the defendants were advised that they were in breach of the Alaska Uniform Residential Landlord and Tenant Act by (1) subletting or assigning the premises to another without the plaintiffs' consent and (2) permitting waste, rubbish, vehicles and debris to accumulate and remain on the premises. Finally, the letter stated that "notice is hereby given that twenty (20) days from receipt of this notice your tenancy will terminate unless within 10 days from the date of this notice you cure all breaches."

On June 3, 1975, plaintiffs commenced an action against defendants by filing a complaint for forcible entry and detainer. The principal relief sought by this action was to require defendants to restore the property to the plaintiffs. The defendants filed an answer and counterclaim. They alleged that they had exercised their option to purchase and requested that plaintiffs be required to convey the premises to them.

Following a trial, the superior court found that the option agreement was a rental agreement with an option to purchase, that the defendants had exercised their option by simply telling the plaintiffs they wished to have the property put in

their names, and that defendants were entitled to judgment for specific performance. The judgment required plaintiffs to convey the property to defendants and required the defendants to deliver to plaintiffs a promissory note, secured by a deed of trust, in the amount of $16,996.05 with interest at the rate of nine percent per annum, to be paid in monthly installments of $250.00 including interest. Plaintiffs have appealed from that judgment.

Plaintiffs contend that if defendants had attempted to exercise their option to purchase the property, the attempt was unsuccessful because they had not abided by the Uniform Residential Landlord and Tenant Act as required by the option to purchase agreement.[1] Plaintiffs refer specifically to the provisions of the Act requiring the tenant to pay the rent on time,[2] to keep the premises in a good and orderly manner,[3] and to not sublet the premises without the landlord's consent.[4]

It is true that from time to time in the latter part of 1974 and early in 1975 the defendants were behind in their monthly rental payments of $250.00. But when plaintiffs served defendants with a "Notice of Noncompliance With Rental Agreement and Revocation of Option to Purchase," on May 11, 1975,[5] the failure to make the monthly payments on time was not mentioned as one of the breaches for which termination of the tenancy was sought. In addition, the record does not indicate that defendants were then in arrears as to their rental payments and, in fact, shows that the plaintiffs acknowledged receipt of the sum of $250.00 from defendants on May 6, 1975, shortly before the notice was given. It is fair to gather from this that the failure to pay the rent on time was not a factor which would prevent defendants from exercising their option to purchase.

As to the allegation that the defendants sublet the premises without the plaintiffs' consent, there is no evidence that this occurred. Defendants did permit some people with a house trailer to reside on the premises for about three months, but did not charge any rent. This was not an act of subletting the premises.

The last alleged breach of the Uniform Residential Landlord and Tenant Act was that defendants had failed to comply with AS 34.03.120 by not keeping the premises clean and by allowing waste, rubbish, and debris to accumulate and remain on the property. There was evidence that defendants were at fault in this regard. But there was also evidence that defendants burned up all debris and cleaned up the premises in the spring of 1975. Plaintiffs' counsel tried to establish the day as May 16, 1975. If that was the date the premises were

---

1. The agreement provides in part:
   . . . If Optionee abides by the State of Alaska Uniform Residential Landlord and Tenant Act and desires in either his name or his wifes [sic] name by June 30, 1975 he may request to Owners to exercise this Option and receive the Two Hundred Fifty Dollars a month paid into Owners at that time to apply in full towards the purchase price of Twenty Thousand Dollars ($20,000.00) at Nine (9) Percent Interest per Annum upon the outstanding balance from the date of execution hereof. . . .

2. AS 34.03.020(c) provides in part:
   Rent shall be payable without demand or notice at the time and place agreed upon by the parties. . . .

3. AS 34.03.120 provides in relevant part:
   The tenant shall
   (1) keep that part of the premises that he occupies and uses as clean and safe as the condition of the premises permit;

   (2) dispose from his dwelling unit all ashes, rubbish, garbage, and other waste in a clean and safe manner; . . .

4. AS 34.03.060(a) provides:
   Unless otherwise agreed in writing, the tenant may not sublet his premises or assign the rental agreement to another without the landlord's consent.

5. AS 34.03.220 provides in subsection (b):
   If rent is unpaid when due and the tenant fails to pay rent within 10 days after written notice by the landlord of nonpayment and his intention to terminate the rental agreement if the rent is not paid within that period of time, the tenancy terminates unless the landlord agrees to allow the tenant to remain in occupancy, and the landlord may terminate the rental agreement and immediately recover possession of the rental unit; only one written notice of default need be given the tenant by the landlord as to any one default.

cleaned up, then since defendants remedied the breach within ten days from the date they were served with notice on May 11, 1975, the rental agreement could not be terminated for that reason.[6]

In their notice to defendants of the termination of the rental agreement, plaintiffs also asserted that defendants had breached the agreement in other respects.[7] Regarding the lien of Kraxberger for well drilling, the record shows that the lien was released within the ten-day period given to defendants by plaintiffs' counsel for curing breaches of the agreement. As to the pets on the premises, Francis testified that Mrs. Vozar knew that there were more than two dogs but said nothing to him about violating the terms of the agreement. In any event, this was not such a substantial breach as would justify disregarding the option. Finally as to the other alleged breaches mentioned in note 7, more of them fall within the tenants' obligation under the Uniform Act. In order to exercise their option to purchase, the agreement required only that defendants abide by the Act and "request" the plaintiffs "to exercise their

option" by June 30, 1975. There was no condition imposed as to defendants' abiding by any other rule of conduct in order to exercise their option.[8]

This brings us to the question of whether the notice of the option to purchase was given as required by the agreement. The pertinent part of that document states:

. . . If Optionee abides by the State of Alaska Uniform Residential Landlord and Tenant Act and desires in either his name or his wifes [sic] name by June 30, 1975 he may request to Owners to exercise this Option and receive the Two Hundred Fifty Dollars a month paid into Owners at that time to apply in full towards the purchase price of Twenty Thousand Dollars ($20,000.00) at Nine (9) Percent Interest per Annum upon the outstanding balance from the date of execution hereof. . . . .

The agreement does not require that the notice to exercise the option to purchase be in writing. In the absence of such an express requirement, an option may be exercised verbally or by any other meth-

---

6. Plaintiffs' counsel notified defendants that their tenancy would terminate in 20 days from the date of the receipt of the notice (May 9, 1975) unless they cured all breaches within ten days "from the date of this notice." This latter period should have been ten days after receipt of the notice and not from the date of the notice. This seems clear from AS 34.03.220, which provides:

(a) Except as provided in this chapter, if there is a material noncompliance by the tenant with the rental agreement or noncompliance with § 120 of this chapter materially affecting health and safety, the landlord may deliver a written notice to the tenant specifying the acts and omissions constituting the breach and specifying that the rental agreement will terminate upon a date not less than 20 days after receipt of the notice. If the breach is not remedied in 10 days, the rental agreement terminates as provided in the notice subject to the provisions of this section. If the breach is remediable by repairs or the payment of damages or otherwise and the tenant adequately remedies the breach before the date specified in the notice, the rental agreement will not terminate. . . .

7. The alleged breaches were as follows:

(1) The presence of numerous animals, none of which were tied, restrained or confined, on the premises in breach of that por-

tion of the agreement which states that the defendants should be restricted to no more than two pets on the premises which shall be tied or confined in some manner.

(2) Incurring an indebtedness to Superior Builders Supply, Inc. representing materials purchased from them for installation on, in or about the subject premises in the amount of $1,748.88, which sum may become a court action.

(3) Incurring a lien in favor of Frank Kraxberger d/b/a Kraxberger Drilling in the amount of $1,269.37 plus costs and interest existing as of May 6, 1975.

(4) Entering into a contractural agreement for sale of the premises with a realtor thereby creating a possible encumbrance and court action.

(5) Contracting with a third party for installation of cabinets on the premises and the payment and installation of such cabinets.

. . . . . .

8. AS 34.03.130(a) provides in part:

A landlord may adopt rules and regulations, which shall be posted prominently on the premises, concerning the tenant's use and occupancy of the premises. . . .

od indicated in the optionor's election to avail himself of the option.[9] That was done in this case. On a number of occasions, defendants requested that the title to the property be placed in their names which is what the agreement indicates was the manner of exercising the option. In addition, on February 4, 1975, defendants' counsel wrote to plaintiffs stating that defendants had previously exercised their option to purchase.

The agreement does indicate that the exercise of the option to purchase may have been conditioned upon the defendants abiding by the Uniform Residential Landlord and Tenant Act. At times, defendants were in default in this respect. But there is nothing in the agreement providing that a notice to exercise the option given prior to the defendants' curing the breaches under the Act would not be effective after the breaches were remedied, without further notice to exercise the option. In the absence of such an express requirement, it may have been the understanding of the parties that after curing breaches under the Act, notices by defendants to exercise their option, previously given on numerous occasions, would then become effective. We adopt this view because the agreement is not clear in this respect and should be construed most strongly against the party by whom the agreement was prepared, i. e., the plaintiffs.[10]

■ The court entered a judgment requiring plaintiffs to convey the property to defendants by a good and sufficient deed. Defendants were required to execute and deliver to the plaintiffs a promissory note, secured by a deed of trust, in the sum of $16,996.05,[11] with interest at the rate of nine percent a year. Plaintiffs contend that this disposition of the dispute was erroneous, and that defendants ought to have been required to make one payment to

plaintiffs of the entire $16,996.05, plus interest, in exchange for a conveyance of the property by plaintiffs to the defendants.

In relevant part, the option to purchase agreement provides:

. . . The Payment of the said property shall be Two Hundred Fifty Dollars and no cents ($250.00) per month . . . If Optionee abides by the State of Alaska Uniform Residential Landlord and Tenant Act and desires in either his name or his wifes [sic] name by June 30, 1975 he may request to Owners to exercise this Option and receive the Two Hundred Fifty Dollars a month paid into Owners at that time to apply in full towards the purchase price of Twenty Thousand Dollars ($20,000.00) at Nine (9) Percent Interest per Annum upon the outstanding balance from the date of execution hereof.

. . . Owners will give Optionee a clear title to said property when paid off in full if Optionee elects to exercise this option.

Monthly payments to be due and payable in legal tender and mailed or delivered to owner at 3110 West Northern Lights, Apt. 3, Anchorage, Alaska 99503 by the fifteenth of each month.

It is not clear from this or other provisions of the agreement whether it was intended that, at the time of exercising the option to purchase, defendants were (1) to get a deed from the plaintiffs and be obligated to pay the balance of the purchase price in monthly increments of $250.00 including interest or (2) to pay the entire balance of the purchase price in one payment in cash at that time. Since the agreement is ambiguous in this respect, resort must be had to extrinsic evidence to ascertain, if possible, the reasonable expectations of the parties.[12]

---

9. *Kuhn v. Hamilton*, 117 N.W.2d 81, 83–84 (N.D.1962).

10. *Tsakres v. Owens*, 561 P.2d 1218, 1220 n. 2 (Alaska 1977).

11. This amount apparently represents the original purchase price of $20,000.00, less the total

of the monthly payments of $250.00 with interest, made by defendants up to the time of the trial.

12. *Martin v. Maldonado*, 572 P.2d 763, 767 (Alaska 1977); *Stordahl v. Gov. Employees Ins. Co.*, 564 P.2d 63, 65–66 (Alaska 1977); *Wes-*

Originally, when defendants expressed an interest in purchasing the property, plaintiff Sandra Vozar drew up and submitted to defendants a form of "purchase agreement" in August 1974. This document provided for the sale of the property by plaintiffs and the purchase by defendants. The purchase price was $20,000.00. Provision was made for the defendants (buyers) to pay the purchase price at the rate of $250.00 a month, including nine percent interest, with a "balloon payment" of $5,000.00 being due by December 31, 1977. Plaintiff Sandra Vozar testified that this agreement called for a three-year payoff.

This agreement was never executed by the parties. Instead, the option to purchase agreement was prepared and executed. The reason for this was that defendant, Richard Francis, was in arrears in support payments due his former wife and children and had other debts to pay. The defendants were afraid that if the property were put in their names, the former Mrs. Francis could "get the property." They therefore agreed with the plaintiffs on the option to purchase agreement, which is the subject of this dispute. It was believed that defendants could fix up and improve the property and sell it by June 30, 1975, the last date set in the option agreement for exercise of the option and then have enough money to pay their debts—particularly the support payments owed by Richard Francis to his former wife. The plaintiffs cooperated in this plan of defendants by offering, on a number of occasions, to list the property and attempt to sell it on behalf of defendants.[13]

It seems reasonably clear that defendants wished to sell the property before the $20,000.00 purchase price was paid in installments of $250.00. Early in 1975, defendants had entered into a contractual agreement to sell the property by executing an earnest money agreement and receiving $400.00 from a proposed purchaser. In addition, they had entered into a real estate

broker's employment contract on February 20, 1975.

In fashioning a decree to establish what he thought was the reasonable expectations of the parties, the trial judge chose to specifically enforce the contract on an installment basis. He required plaintiffs to convey the property to defendants by the execution and delivery of a deed to the property. In turn, defendants were to execute and deliver to plaintiffs a promissory note for the balance due on the purchase price and, as security for the note, a deed of trust. Payments of the balance of the purchase price were to be made at the rate of $250.00 a month, which included interest at 9 percent per annum.

We believe that the major uncertainty in this case is whether, once the option was exercised by defendants, the purchase price was to be paid in cash or in monthly installments. Considering the entire record and the dealings between the parties, we believe it is appropriate to allow specific performance but on a cash basis rather than on an installment basis. In *Rego v. Decker*, 482 P.2d 834, 840 n. 19 (Alaska 1971), we quoted from Corbin on Contracts as follows:

> If the only uncertainty is as to the period of credit to be allowed, the right to interest not being involved, the vendee may surmount the difficulty and entitle himself to specific performance by asking no credit whatever and offering to pay the whole amount in cash. Corbin, Contracts § 1174, at 284–85 (1964).

We believe it would be a fair solution to the problem present in this case to require defendants, as a condition of obtaining specific performance of the agreement, to pay the balance of the purchase price in cash or else be in default under the deed of trust. This requirement will be an incentive for defendants to either sell the property or, in some other fashion, to secure the necessary funds to pay off the deed of trust and thus

*sells v. State*, 562 P.2d 1042, 1052 n. 39 (Alaska 1977). *See Tsakres v. Owens*, 561 P.2d 1218, 1223 (Alaska 1977) (concurring opinion of Chief Justice Boochever, joined by Justice Rabinowitz).

13. Plaintiffs were real estate agents and brokers.

be in a position to pay the arrearages and support payments owed by Richard Francis to his former wife and to pay other debts that defendants said they owed. We believe it would be fair to require defendants to make the cash payment for the balance of the purchase price within 60 days from the mandate of this court.

This case is remanded to the superior court for modification of the judgment in accordance with the views set forth in this opinion. As so modified, the judgment is AFFIRMED.

RABINOWITZ, J., not participating.

BOOCHEVER, Chief Justice, dissenting in part.

I would affirm the trial court's judgment whereby payments for the balance of the purchase price are to be made at the rate of $250.00 a month from which shall be deducted interest at nine percent per annum. There is no question but that the original proposed sale agreement provided for payment in monthly installments at $250.00 per month at nine percent interest. The original proposal did have a balloon payment provision of $5,000.00 payable on or before December 31, 1977.

After consideration of the Francis' desire not to have the property in their name in order to avoid claims of Mr. Francis' former wife and creditors, an option agreement was executed. The signed agreement of August 12, 1974, stated in part:

2) PRICES and TERMS: The Payment of the said property shall be Two Hundred Fifty Dollars'and no cents ($250.00) per month. Optionee shall have paid and Owners signatures below hereby acknowledges receipt of Two Hundred Fifty Dollars ($250.00). If Optionee abides by the State of Alaska Uniform Residential Landlord and Tenant Act and desires in either his name or his wife's name by June 30, 1975 he may request to Owners to exercise this Option and receive the Two Hundred Fifty Dollars a month paid into Owners at that time to apply in full towards the purchase price of Twenty Thousand Dollars ($20,000.00) at Nine (9)

Percent Interest per Annum upon the outstanding balance from the date of execution hereof. Monthly payments to be due and payable in legal tender and mailed or delivered to Owner at 3110 W. Northern Lights Apt. # 3 Anchorage, Alaska 99503 by the 15th of each month.

The agreement does not specify that the balance of the $20,000.00 must be paid upon exercising the option. In fact, the final sentence refers to "Monthly payments to be due and payable in legal tender and mailed or delivered to Owner at 3110 W. Northern Lights Apt. # 3 Anchorage, Alaska 99503 by the 15th of each month." It thus seems to me that the intent of the parties, as can be determined from all of the circumstances surrounding the execution of the agreement and leading up to it, was that payment be made in monthly installments. Moreover, the agreement was prepared by the Vozars; and, if there is doubt, it should be construed against them. *Tsakres v. Owens*, 561 P.2d 1218, 1220 n.2 (Alaska 1977).