Roy P. ANDERSON, Plaintiff–Appellee,

v.

DUNTON MANAGEMENT COMPANY, a Colorado corporation; and Central Life Assurance Company, an Iowa corporation, Defendants–Appellants.

No. 92CA0420.

Colorado Court of Appeals, Div. IV.

June 24, 1993.

Rehearing Denied July 29, 1993.

Certiorari Denied Dec. 27, 1993.

Branney, Hillyard, Kudla and Jurdem, John S. Portman, Neil Hillyard, Englewood, for plaintiff-appellee.

Hall & Evans, Bruce A. Menk, Alan Epstein, Denver, for defendants-appellants.

Opinion by Judge MARQUEZ.

Defendants, Dunton Management Company (Dunton) and Central Life Assurance Company (Central Life), appeal the judgment entered upon a jury verdict in favor of plaintiff, Roy Anderson. We affirm.

On February 3, 1990, in the early morning, as he was exiting his vehicle plaintiff slipped and fell in a shopping center parking lot owned by Central Life and managed by its agent Dunton. Dunton had contracted with defendant Total Property Services (Total) for snow removal in the parking lot. On February 2, snow fell in the morning and early afternoon and on that date Total spent eight hours plowing the lot.

Plaintiff initiated this negligence action against Central Life, Dunton, and Total to recover for the injuries sustained in that fall. A jury found that Central Life, Dunton, and plaintiff were negligent and that Total was not negligent. It charged 35% of the negligence to Central Life, 60% to Dunton, and 5% to plaintiff. The trial court entered judgment on the jury's verdict.

After entry of judgment, plaintiff moved to amend the judgment to reflect judgment against Central Life for 95% of the jury award. Plaintiff also filed a bill of costs, requesting all actual costs accruing after the pre-trial settlement offer of $140,000 made pursuant to § 13–17–202, C.R.S. (1992 Cum. Supp.). The trial court granted Anderson's motion to amend the judgment and awarded actual costs pursuant to § 13–17–202. This appeal followed.

## I.

Defendants contend that sufficient evidence does not exist in the record to support the jury's findings that Dunton managed the property unreasonably or had either actual or constructive notice of a dangerous condition in the parking lot. We disagree.

Here, the jury was instructed that in order for the plaintiff to recover from any of the defendants on his claim of negligence, it must find as to each defendant that:

2. A condition existed on the premises which created an unreasonable risk of injury or damage to persons such as Plaintiff. [and]

3. Either

a. this condition was created by Defendants or was of a continuous nature or was reasonably foreseeable because of Defendants' operating methods, or

b. this condition was one Defendants knew, or reasonably should have known of, in sufficient time to have removed it or adequately warned persons that the condition was there so that injury could have been prevented, and they failed to do so; [and]

4. Defendants were negligent because they failed to use reasonable care in the management or maintenance of the premises or to remove or give adequate warning of the condition. . . .

The relevant inquiry is whether the landowner, in the management of the property, acted as a reasonable person in view of the probability or foreseeability of injuries to others. *Gallegos v. Phipps,* 779 P.2d 856 (Colo.1989).

Questions of negligence and cause are issues of fact to be determined by the jury, and the appellate courts are bound by the jury's findings when there is competent evidence in the record supporting those findings. *City of Aurora v. Loveless,* 639 P.2d 1061 (Colo.1981).

The question of notice depends on the facts and circumstances of each case and is ordinarily one to be determined by the jury. *Morgan v. Board of Water Works,* 837 P.2d 300 (Colo.1992).

■ Constructive notice of a dangerous condition on the part of the defendants need not be proved by direct evidence. The circumstances surrounding the injury, including the facts which demonstrate the existence of the dangerous condition itself, may give rise to a reasonable inference of constructive notice. Thus, the very nature of the defect may be considered in determining whether to leave the question of constructive notice in the hands of the jury. *Bodeman v. Shutto Super Markets, Inc.*, 197 Colo. 393, 593 P.2d 700 (1979).

■ The record on review must be evaluated in a light most favorable to the party in whose favor the verdict was returned, and every inference fairly deducible from the evidence is to be drawn in favor of the judgment. *Gaulin v. Templin*, 162 Colo. 55, 424 P.2d 377 (1967).

■ In this case, witnesses testified that the parking lot had a slope and that snow was customarily plowed into piles uphill on the parking lot. Dunton's property manager during the time in question testified that: "The farther up hill we went with it, the more likely we would guarantee we would have runoff and refreeze it." He acknowledged that such melting and refreezing are completely foreseeable. He further testified that it would be reasonable for someone to come back and recheck to "make sure there wasn't a problem" with melting and refreezing and that either he or his supervisor personally checked the shopping center's condition twice a week.

According to the manager of a restaurant in the shopping center, the parking lot was an "icy mess." He testified that the snow removal people had put snow over the handicapped parking spaces adjacent to his restaurant, that the piled snow had been there for "a while," and that runoff from the melting piles created a "thin river stream" that froze at night. He further testified that, approximately a week before the accident here at issue, another person had fallen in the same parking lot and that, on one occasion, a parked car had slid down the hill without the tires rolling.

Further, an employee of a supermarket in the shopping center testified that the parking lot would get very icy during the winter.

The jury could have concluded from this testimony that Dunton was either actually aware of the icing problems caused by melting and refreezing or that the problem was of a sufficiently continuous and long-standing nature as to place Dunton on constructive notice.

## II.

Defendants argue that a new trial is warranted because the jury's findings that Dunton was negligent but that Total was not negligent are irreconcilably inconsistent. We disagree.

■ Jury verdicts will not be reversed for inconsistency if a reading of the record reveals any basis for the verdicts. Our task is to examine the record and determine whether there was competent evidence from which the jury could logically have reached the verdict in this case. Furthermore, if, under the evidence adduced, there is a view of the case which makes the jury's answers consistent, we must adopt that view. *City of Aurora v. Loveless, supra.*

■ Here, a witness from Total testified that, once the plowing was done after a snowstorm, he did not go back to check for ice until there was more snow or problems resulting from blowing and drifting of snow. He further testified that Total's contract with Dunton required a specific request from Dunton to spread sand or icemelt if a problem arose and that it was Dunton's responsibility to discover icy conditions after the witness did his job as a snowplower. He also did not recall being asked to monitor ice conditions in the shopping center parking lot.

Dunton's property manager at the time in question testified that, in the days following a storm, Total had a responsibility to sand as required. However, he conceded that he could not recall exactly what specific instructions might have been given to Total and was instead relying upon the way he usually handled it with contractors.

The contract between Dunton and Total states:

The Maintenance Contractor shall provide services necessary for the clean-up of any snow storm with an accumulation of 2″ or as more specifically directed by Contracting Officer. Snow services available include plowing, removal, sanding, and de-icing. Contracting Officer shall direct Maintenance Contractor regarding the frequency and extent of services required. Snow services shall begin as early as possible, and shall continue as long as storm duration and conditions dictate.

The jury could reasonably have concluded from this evidence that Total's responsibility extended only to the initial plowing after a storm and that de-icing and other services were to be provided in the intervals between storms as directed by Dunton. The jury could have also concluded that Dunton, as manager of the property, was responsible for inspecting the premises between snowstorms to insure that ice buildup had not occurred and that no specific instruction concerning de-icing was given on this occasion. Thus, the jury's verdicts may be viewed as being consistent. *See City of Aurora v. Loveless, supra.*

### III.

■ Defendants next contend that the trial court erred in submitting to the jury the issue of Dunton's liability based upon *respondeat superior* for the conduct of Total, when such claim was asserted by plaintiff for the first time only after the conclusion of trial. We disagree.

At the conclusion of the evidence during the discussion of jury instructions, plaintiff moved, pursuant to C.R.C.P. 15(b), to amend his complaint to conform to the evidence concerning the employer-employee relationship between Dunton and Total.

C.R.C.P. 15(b) provides in part:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. . . .

The precise nature of the relationship between Total and Dunton, and the extent to which Dunton controlled Total's actions, were the subject of extensive testimony. The witness from Total, as well as Dunton's property manager at the time of plaintiff's fall and Dunton's vice-president, all testified concerning the extent to which Dunton could control Total's actions in clearing and de-icing the parking lot. At no time during this testimony did Dunton object that the evidence being presented was beyond the scope of the pleadings.

Further, two of Anderson's proposed jury instructions made available to defendants prior to trial and ultimately submitted to the jury set forth an employer-employee relationship between Dunton and Total as a theory of the case. Thus, defendants were placed on notice that plaintiff intended to present this issue to the jury. Also, at a conference during trial the court and the parties generally discussed the proposed instructions, including specifically one instruction on this issue.

In ruling on the motion to amend, the court stated that it thought the issue was obvious, not only at the time the instructions were submitted, but from any reasonable reading of the pleadings.

Because defendants were on notice of this theory by virtue of the evidence presented, the proposed jury instructions, and the conference during trial, we conclude that the court did not abuse its discretion in granting the motion to amend. *See* C.R.C.P. 15(b); *Motlong v. World Savings & Loan Ass'n,* 168 Colo. 540, 452 P.2d 384 (1969).

■ Additionally, the finding that Total was an employee of Dunton is not, as argued by defendants, inconsistent with a finding that Total caused no injury or damage to plaintiff. These findings are consistent if the jury was persuaded by the testimony of the witness from Total that, after plowing, it was Dunton's responsibility to discover icy conditions.

### IV.

Defendants next contend that a new trial is warranted because of the misconduct of

plaintiff's counsel in commenting on the impartiality of a witness. We disagree.

The witness, an employee of a supermarket in the shopping center, had previously fallen in the parking lot and had a pending lawsuit against the three defendants in this litigation. Defendants' motion in limine to limit her testimony was granted resulting in the exclusion of evidence of both the fall and the pending lawsuit.

In closing argument, commenting upon the testimony of the witness, plaintiff's counsel stated:

Again ... what does [the witness in question] have to gain by coming in here and telling you what she saw? Does she have an ax to grind with these people?

Although they later moved for a mistrial based upon this statement, defendants made no contemporaneous objection.

When no timely objection is made to alleged improper argument of counsel to the jury, error cannot be predicated thereupon upon appeal. *See Freeland v. Fife*, 151 Colo. 339, 377 P.2d 942 (1963). Here, any limitation on the witness' testimony concerning possible bias was due, at least in part, to defendants' own motion in limine.

Under these circumstances, we conclude that counsel's comment does not constitute reversible error.

## V.

Defendants also contend that plaintiff's counsel's comments in closing arguments regarding the size and financial condition of defendants warrants a new trial. We disagree.

During closing argument, while discussing the issue whether an employer-employee relationship existed between Dunton and Total, plaintiff's attorney stated: "Those two big companies don't get off the hook by blaming the little company if they were in an employer-employee relationship."

We find no reference in counsel's comment to the financial condition of either Dunton or Central. Further, when viewed in the context of counsel's argument, this comment appears to be directed more towards the issue of control in the employer-employee relationship than an appeal to the jury to award damages based upon the size of Dunton and Central.

## VI.

Defendants next contend that the trial court erred in amending the judgment to reflect judgment against Central Life for 95% of the jury award. We disagree.

The trial court granted plaintiff's post-trial motion to amend judgment and awarded him actual costs, pursuant to § 13–17–202, C.R.S. (1992 Cum.Supp.), on the basis that the total amount of the jury award returned against Dunton and Central Life plus pre-offer interest and pre-offer costs exceeded the $140,000 offer of settlement made by plaintiff prior to trial.

As stated in the jury instructions, Dunton was the agent of Central Life, and therefore, any act or omission of Dunton was in law the act or omission of Central Life. Thus, the amendment merely stated what was, in fact, already the case—that Central Life was ultimately liable for all damages awarded by the jury against it and its agent.

Defendants, however, assert that the offer to settle was made to all defendants and that plaintiff did not recover a judgment in excess of his offer of settlement to any one defendant. We are not persuaded.

The judgment, as amended, with allowable pre-offer interest and pre-offer costs included, *see Carpentier v. Berg*, 829 P.2d 507 (Colo.App.1992), was $148,078.96, and was entered against only one defendant. Thus, Central accrued a greater liability under the judgment than it would have had it accepted the settlement offer. *See Askew v. Gerace*, 851 P.2d 199 (Colo.App.1992) (plaintiff who recovered less than offer of settlement not entitled to costs, notwithstanding that co-plaintiff to whom offer of settlement was jointly made dropped out of suit).

The judgment is affirmed.

PLANK and REED, JJ., concur.