George M. KARAKEHIAN, Plaintiff–
Appellee and Cross–Appellant,

v.

Fred Y. BOYER, Defendant–Appellant
and Cross–Appellee.

No. 93CA1045.

Colorado Court of Appeals,
Div. III.

Dec. 1, 1994.

As Modified on Denial of Rehearing
Jan. 12, 1995.

Certiorari Granted July 24, 1995.

Martin & Mehaffy, Joel C. Maguire, Boulder, for plaintiff-appellee and cross-appellant.

Boyer and Snively, Fred Y. Boyer, Robert W. Snively, Stone, Sheehy, Rosen & Byrne, P.C., Andrew Rosen, Boulder, for defendant-appellant and cross-appellee.

Opinion by Judge DAVIDSON.

Defendant, Fred Y. Boyer, appeals from the judgment entered upon a jury verdict in favor of plaintiff, George M. Karakehian. Plaintiff cross-appeals from a ruling by the trial court on damages. The issues on appeal primarily concern the non-written exercise of a signed lease/option agreement. We modify the judgment, and as modified, affirm.

In May 1991, plaintiff leased a house to defendant under a four month written lease/option which was to terminate on September 8, 1991. The lease specified monthly

rent payments of $1,750 and provided defendant with an option to purchase the property at any time during the term of the lease for $275,000. On September 8, 1991, defendant gave plaintiff a check for $1,750 with a handwritten note which read:

9–5–91

George—

Let's get together Monday to discuss closing. Lunch would be good time.

FYB

The parties met for lunch on Monday, September 9, 1991, and discussed setting a closing date for the sale of the property, on or before September 27, 1991.

Subsequently, defendant did not return plaintiff's phone calls or keep appointments. Ultimately, plaintiff served defendant with a notice to quit the premises and withheld defendant's damage deposit. Defendant filed suit in county court demanding its return, and plaintiff counterclaimed for breach of contract and promissory estoppel. The case was transferred to district court, and, based on a jury verdict, a judgment was entered in plaintiff's favor on the breach of contract claim in the amount of $43,877.26, and in favor of plaintiff on defendant's damage deposit claim.

I.

After the close of evidence, defendant moved for a directed verdict, asserting the affirmative defense of the statute of frauds. The trial court denied the motion because, in its view, the issue should have been resolved by a pre-trial motion for summary judgment. Defendant contends that this was error.

We conclude that the affirmative defense of the statute of frauds is inapplicable to plaintiff's claims. Accordingly, we agree with the trial court's decision to deny the motion for directed verdict and need not decide whether the failure to assert an affirmative defense in a motion for summary judgment precludes its assertion at trial. *See Zigan Sand & Gravel, Inc. v. Cache La*

*Poudre Water Users Ass'n,* 758 P.2d 175 (Colo.1988).

A.

■ In order to find for plaintiff on his claim for breach of contract, the jury had to find, first, that there was an express contract for the lease of the house with an option to purchase and, second, that defendant exercised that option. Defendant argues that the statute of frauds was applicable here so as to require a formal written exercise of the option, signed by him. The absence of such a writing, he asserts, required the trial court to direct a verdict in his favor. We do not agree.

■ A purchase option in a lease is an irrevocable offer to sell the leased property to the lessee for a definite consideration. *Polemi v. Wells,* 759 P.2d 796 (Colo.App. 1988). Here, the written lease/option provided the terms of the offer and was signed by plaintiff. All that was required for the option to ripen into a binding contract was defendant's acceptance. *See Polemi v. Wells, supra; cf. Columbia Savings & Loan Ass'n v. Counce,* 167 Colo. 365, 447 P.2d 977 (1968).

■ An option must be exercised in strict compliance with its terms. *See Sports Premiums, Inc. v. Kaemmer,* 42 Colo.App. 172, 595 P.2d 696 (1979). Accordingly, an orally exercised option is not valid if the agreement calls for written exercise. *See T.W. Anderson Mortgage Co. v. Robert Land Co.,* 480 P.2d 109 (Colo.App.1970) (not selected for official publication).

■ If, however, the agreement prescribes no specific mode of exercise, any method will suffice so long as it is a manifestation of the optionee's unconditional decision to exercise. *Howard v. Interstate Development Co.,* 29 Colo.App. 287, 483 P.2d 1366 (1971). Here, the lease did not require any particular form of exercise, so there is no basis to assume that a written exercise was required.

Defendant argues that, nonetheless, a written exercise must be presumed here because

the absence of such writing would violate the statute of frauds. We disagree.

Some jurisdictions use a version of the statute of frauds which requires a writing signed *by the party to be charged.* In those jurisdictions, the validity of a non-written exercise of an option may depend upon who is seeking enforcement. *See Burkhead v. Farlow,* 266 N.C. 595, 146 S.E.2d 802 (1966) (statute refers to party to be charged; thus, a written option agreement, signed by optioner, satisfies statute of frauds; however, optionee that verbally exercises that option may utilize a statute of frauds defense).

■ The Colorado statute of frauds, § 38–10–108, C.R.S. (1982 Repl.Vol. 16A), however, requires a writing signed by the party *by whom the sale is to be made.* The purpose of the statute is to protect the vendor, and thus, the purchaser cannot assert the statute of frauds against a vendor who is ready, willing, and able to perform. So long as the protected party under the statute is willing to treat the contract as valid, it will not be considered void. *Garbarino v. Union Savings & Loan Ass'n,* 107 Colo. 140, 109 P.2d 638 (1941); *Houtchens v. United Bank,* 797 P.2d 814 (Colo.App.1990); *see also Burnford v. Blanning,* 33 Colo.App. 444, 525 P.2d 494 (1974) (statute of frauds may be asserted only by the seller), *rev'd on other grounds,* 189 Colo. 292, 540 P.2d 337 (1975); H. Fusilier, *Real Estate Law* § 16.5 (1977).

Accordingly, and contrary to defendant's contention, no additional writing, signed by him, as purchaser, was required under the statute of frauds. *Cf. River City Development Corp. v. Slemmer,* 781 S.W.2d 525 (Ky. App.1989) (because the vendee's acceptance of an offer to sell real property is not required to be by a writing signed by vendee, an oral exercise of an option to purchase does not offend the Kentucky statute of frauds); *see Vozar v. Francis,* 579 P.2d 1056 (Alaska 1978) (in the absence of an express requirement that exercise be in writing, an option to purchase real estate may be exercised verbally, and may be enforced by the vendor); *Ban–Co Investment Co. v. Loveless,* 22 Wash. App. 122, 587 P.2d 567 (1978) (because the terms of the agreement to sell were contained in the written option contract, an oral exercise of the option to purchase real property did not offend the Washington statute of frauds).

**B.**

■ The statute of frauds also is not an affirmative defense to a claim of promissory estoppel. *See Chidester v. Eastern Gas & Fuel Associates,* 859 P.2d 222 (Colo.App. 1992).

**II.**

Because the statute of frauds was not relevant to either of plaintiff's claims, we perceive no error in the trial court's refusal to so instruct the jury. *See Davis v. Fortino & Jackson Chevrolet Co.,* 32 Colo.App. 222, 510 P.2d 1376 (1973).

**III.**

**A.**

■ Defendant next contends that the agreement, by its terms, required the tender of the purchase price as a condition precedent to exercise of the option. Because he did not make such a tender, he asserts the option could not have been exercised. We disagree.

■ An option agreement may require payment or tender of a portion of the purchase price, in which case the optionee generally must not only accept, but also must pay or tender that amount within the prescribed time. *Miller v. Carmody,* 152 Colo. 353, 384 P.2d 77 (1963) (optionee that did not tender or pay partial purchase price as specifically required by option could not enforce the contract); *see also In re Trusts created by Ferguson,* 751 P.2d 1008 (Colo.App.1987) (lease gave lessee option to purchase at the expiration of the lease term "upon payment" of one-half of the market value of the property and improvements).

The lease/option here provided that defendant was given an "option to purchase said above described premises at any time during the term of this lease at and for the sum of $275,000.00 payable as follows: cash at closing." The agreement contains no language suggesting that payment of the purchase price was a condition precedent to exercise of the option.

Instead, the agreement sets the purchase price "at and for the sum of $275,000.00." *Cf. Carleno v. Vollmert Tire Co.*, 36 Colo. App. 446, 448, 540 P.2d 1149, 1150 (1975) ("It is further agreed that at any time prior to [last day of option period and within 90 days following] the lessee, only, shall have an option to purchase all the entire building at a total purchase price of [$110,000]"); *and Temple Hoyne Buell Foundation v. Holland & Hart*, 851 P.2d 192, 195 (Colo.App.1992) ("From and after the time of distribution, [buyer] will have six months to purchase, at its option, 31.73576% of the mineral interest now owned by [owner], and I [agent] agree to sell to [buyer] said interest for the sum of $305,500").

■ Moreover, the agreement indicates payment is to be by cash at *closing*. The term "closing," in real estate transactions, is a term of art which refers "to the final steps of the transaction whereat the consideration is paid, mortgage is secured, deed is delivered or placed in escrow, etc." *Black's Law Dictionary* 231 (5th ed. 1979); *cf. Great Falls Properties, Inc. v. Professional Group, Ltd.*, 649 P.2d 1082 (Colo.1982).

Thus, acceptance of an offer to sell real estate necessarily precedes "closing." Hence, we cannot construe the agreement here to require payment of the entire purchase price as a condition precedent to exercise of the option; by such construction the parties literally would have had to be "closing" the transaction before acceptance could take place. *Cf. Shull v. Sexton*, 154 Colo. 311, 390 P.2d 313 (1964) (ascertainment of a legal description, examination of an abstract of title, preparation of conveyance, and payment of purchase price, are all circumstances for measuring a reasonable time for performance following exercise of an option to purchase real property).

Defendant relies upon *Cline v. Estate of Heron*, 103 Colo. 188, 84 P.2d 833 (1938), for the proposition that, if an option agreement indicates that the optionee must pay certain consideration, payment of that consideration is necessary in order to exercise the option. A careful reading of *Cline*, however, reveals that the court there refused to bind the seller to the option contract when, after a reasonable time, the buyer demonstrated no willingness or ability to pay the consideration. Thus, the buyer's notice of exercise was without effect. In contrast, the agreement here was silent as to the method of exercise.

## B.

■ We also reject defendant's contention that, even if tender of payment was not required by the terms of the lease/option contract, the evidence was insufficient to support a factual finding that he had exercised the option.

Here, the evidence, when viewed in the light most favorable to the opposing party, *see Mile Hi Concrete, Inc. v. Matz*, 842 P.2d 198 (Colo.1992), indicates the note written by defendant invited plaintiff to "get together Monday to discuss closing," as, in fact, they did. As discussed above, "closing" in a real estate context is undertaken only after both parties have a firm agreement as to price, method of payment, and other terms other than minor modifications. *Cf. Great Falls Properties, Inc. v. Professional Group, Ltd., supra.*

Defendant, an attorney, testified that his use of the word "closing" was regrettable because he did not mean a real estate closing but instead meant "negotiating an agreement." The jury, however, was not obligated to accept defendant's explanation. *See Romero v. Denver & Rio Grande Western Ry. Co.*, 183 Colo. 32, 514 P.2d 626 (1973); *Technical Computer Services, Inc. v. Buckley*, 844 P.2d 1249 (Colo.App.1992).

Neither does the tender of an additional month's rent conclusively establish that defendant rejected the option. By September 5, 1991, it was undoubtedly clear to both parties that the transaction would not close by the end of the lease period and that additional rent would be necessary. Accordingly, there was sufficient evidence before the jury to support its verdict.

## IV.

In a related argument, defendant contends that the trial court erred in allowing certain parol evidence, which he claims contradicted the terms of the written lease/option agreement. We disagree.

■ Unless fraud, accident, or mistake in the formation of a contract is alleged, parol evidence is not admissible to add to, subtract from, vary, contradict, change, or modify an unambiguous integrated agreement, and evidence of the negotiations which lead up to a contract is inadmissible to vary its terms. *See Hoffman v. Wichita Farm Lighting Co.*, 94 Colo. 153, 28 P.2d 808 (1934); *Tripp v. Cotter Corp.*, 701 P.2d 124 (Colo.App.1985).

■ The parol evidence rule, however, does not apply to oral representations which are not inconsistent with the terms of the final written agreement and are not of the type necessarily expected to be included within the final agreement. *Stevens v. Vail Associates, Inc.*, 28 Colo.App. 344, 472 P.2d 729 (1970); *see also Thrifty Rent–A–Car System v. Chuck Ruwart Chevrolet, Inc.*, 500 P.2d 172 (Colo.App.1972) (not selected for official publication) (parol evidence rule does not bar admission of oral representations which were inducements for a contemporaneous written agreement).

■ Here, plaintiff testified that, because of defendant's oral representations, he acquiesced in the lease/option arrangement even though he was reluctant to rent the property. Contrary to defendant's contention, this testimony does not change or contradict the terms of the lease/option agree-

ment or bind defendant to purchase the property. It explains why plaintiff decided to enter into the lease/option agreement.

■ Additionally, parol evidence may be introduced to demonstrate that a written instrument did not become a binding obligation because an agreed upon condition precedent did not occur. *See Cosper v. Hancock*, 163 Colo. 263, 430 P.2d 80 (1967). As discussed, an option agreement ripens into a binding purchase contract only upon exercise. *See Polemi v. Wells, supra.*

Both parties' expectations regarding the lease/option arrangement were thus relevant to the jury issue of whether defendant had, in fact, exercised the option.

Because exercise of the option was contested and because the evidence was not admitted to contradict the terms of the lease/option, the parol evidence rule did not bar its admission. *See Boettcher DTC Building Joint Venture v. Falcon Ventures*, 762 P.2d 788 (Colo.App.1988).

Finally, defendant's representations that he wanted to buy the property were admissible as to the promissory estoppel claim. *See Ralston Oil & Gas Co. v. July Corp.*, 719 P.2d 334 (Colo.App.1985); *Mead Associates, Inc. v. Antonsen*, 677 P.2d 434 (Colo.App. 1984).

Here, the record indicates that defendant effectively consented to a jury trial on both the legal and equitable claims, *See Mountain States Telephone & Telegraph Co. v. DiFede*, 780 P.2d 533 (Colo.1989), and did not request an instruction limiting the use of the testimony to the promissory estoppel issue. *See Polster v. Griff's of America, Inc.*, 184 Colo. 418, 520 P.2d 745 (1974).

We view these choices as trial tactics. Having chosen this strategy, defendant cannot now complain that evidence, admissible as to at least one of plaintiff's claims, was admitted without limitation. *See Polster v. Griff's of America, Inc., supra; People v. Trujillo*, 860 P.2d 542 (Colo.App.1992); *Morgan County Department of Social Services v.*

*J.A.C.,* 791 P.2d 1157 (Colo.App.1989). *See also Gorsich v. Double B Trading Co.,* 893 P.2d 1357 (Colo.App.1994).

## V.

We also disagree with defendant that the trial court erred in limiting the testimony of an unendorsed witness.

Generally, C.R.C.P. 16 does not require disclosure of lay witnesses called in "rebuttal" because it is not always possible to know in advance, even with extensive pre-trial disclosure, everything which may be revealed at trial. Under proper circumstances, if a party has been truly surprised, unendorsed rebuttal testimony is allowed. *See Taylor v. Mazzola,* 150 Colo. 553, 375 P.2d 96 (1962).

According to the record, however, defendant admitted knowledge of the expected testimony and, in fact, was able to give an offer of proof of his rebuttal evidence before trial. The record thus supports the trial court's finding that this witness should have been properly endorsed. We perceive no abuse of discretion in limiting his testimony. *See Freedman v. Kaiser Foundation Health Plan,* 849 P.2d 811 (Colo.App.1992).

## VI.

Defendant contends that the jury verdict on damages must be reversed because of a lack of sufficient evidence as to the fair market value of the property. We disagree.

At trial, the only evidence as to value was the price at which the home was sold. The sale price of a piece of property is competent evidence of its market value, but it is not conclusive. *See Fountain v. Mojo,* 687 P.2d 496 (Colo.App.1984).

Defendant maintains that additional evidence was necessary before the jury could determine fair market value. However, defendant had the opportunity to discredit the sale price evidence at trial, but he failed to do so. *See Harrison v. Albright,* 40 Colo. App. 227, 577 P.2d 302 (1977). Hence, the jury could properly base its damages award on the sale price.

## VII.

Defendant also argues that the trial court erred by refusing to reduce damages by 50% to reflect plaintiff's wife's one-half interest in the property. Again, we disagree.

According to C.R.C.P. 19(a), plaintiff's wife was a party to be joined if feasible as her interest in the property could submit defendant, if liable, to a double or inconsistent obligation. *See Seago v. Fellet,* 676 P.2d 1224 (Colo.App.1983). Had defendant made a proper motion under C.R.C.P. 19, joinder of plaintiff's wife would have been mandatory, and amendment of the complaint would have been compelled. *See Potts v. Gordon,* 34 Colo.App. 128, 525 P.2d 500 (1974).

Although the issue may be raised at any stage of the proceedings, even for the first time on appeal, *see Potts v. Gordon, supra,* a party with knowledge of a person whose joinder may be required may not wait until late in the proceedings and then raise the issue for his own protection rather than that of the allegedly indispensable person. *See Greco v. Pullara,* 166 Colo. 465, 444 P.2d 383 (1968).

Here, because the record shows unequivocally that defendant had and rejected a clear opportunity to insist upon joinder at trial, any error which subsequently may have resulted was at his own invitation. *See Morgan County Department of Social Services v. J.A.C., supra; Flexisystems, Inc. v. American Standards Testing Bureau, Inc.,* 847 P.2d 207 (Colo.App.1992).

## VIII.

Finally, defendant argues that the trial court erred by allowing plaintiff to claim as damages interest paid on his first mortgage

and real property taxes. As a related issue, plaintiff claims on cross-appeal that the trial court erred by not allowing plaintiff to claim as damages the interest paid on his second mortgage. We conclude that the trial court erred by excluding evidence of the interest paid on the second mortgage and that the undisputed amount of that interest must be included in the amount of the judgment.

## A.

A seller's general damages for a breach of a land purchase contract are: "[t]he amount, if any, by which the contract price exceeded the market value of the property at the time of the breach, less any payments made by the defendant on the contract." *CJI–Civ.3d* 30:37 (1990); *see also F. Poss Farms, Inc. v. Miller*, 35 Colo.App. 152, 529 P.2d 1343 (1974). It logically follows that any other items of damages are special damages and should be specifically pled. *See* C.R.C.P. 9.

■ Defendant argues that, because plaintiff pled no special damages in his complaint, evidence as to interest paid on the first mortgage and property taxes should not have been allowed. We do not agree.

■ A non-breaching party's out of pocket expenses which would not have been incurred if the real estate transaction had closed, including taxes and interest on existing encumbrances, are properly recoverable as damages. *Higbie v. Johnson*, 626 P.2d 1147 (Colo.App.1980). And, the record indicates that, here, these items were listed in plaintiff's disclosure certificate. Therefore, defendant was, or should have been, aware of them before trial. *See Andrikopoulos v. Broadmoor Management Co.*, 670 P.2d 435 (Colo.App.1983).

■ The trial court holds wide discretion to permit amendment of the pleadings to include special damages, especially when the opposing party is made aware of the items prior to trial. *See Welborn v. Sullivant*, 167 Colo. 35, 445 P.2d 215 (1968); *Foster v. Feder*, 135 Colo. 585, 316 P.2d 576 (1957);

C.R.C.P. 15. Therefore, we perceive no abuse of discretion in allowing plaintiff to amend his pleadings as to the special damages claimed here. *See Anderson v. Dunton Management Co*, 865 P.2d 887 (Colo.App. 1993); *Turley v. Ball Associates Ltd.*, 641 P.2d 286 (Colo.App.1981).

## B.

■ Plaintiff claims, however, that the trial court erred by excluding evidence of interest in the amount of $6,304.42 on his second mortgage as an item of special damages. The trial court ruled that the existence of a second mortgage was not reasonably foreseeable and interest paid upon such a mortgage, therefore, could not be considered a natural and probable consequence of the breach. Plaintiff argues that this item of damages was foreseeable, and since the amount claimed also was disclosed to defendant before trial, the court's ruling constitutes error. We agree.

In order to award special damages in a breach of contract case, the jury must find, first, that the damages were a natural and probable consequence of the breach and, second, that at the time of contract formation, the defendant reasonably could anticipate, from facts and circumstances as defendant knew or should have known them to be, that the damages would probably be incurred. *See CJI–Civ.3d* 30:35 (1990).

The record indicates that defendant knew that rent charged to him was calculated to cover plaintiff's mortgages and, thus, defendant, at the time of contract formation, knew or should have known that more than a single mortgage was held on the property.

According to *Higbie v. Johnson, supra*, interest on existing encumbrances may be recoverable as damages; the court there impliedly acknowledged that the existence of such encumbrances is foreseeable. Encumbrances upon residential real property often include second mortgages. We perceive no basis to conclude as a matter of law that it makes any difference if the owner has bor-

rowed once, or several times, against the value of his home. Therefore, evidence of interest on the second mortgage should not have been excluded.

■ If the verdict is conclusive as to liability, and if the jury had awarded damages equal to the full amount claimed and which it was allowed to consider, an appellate court may properly conclude that the jury intended to award the plaintiff complete relief for all damages incurred and may increase the judgment accordingly. *See Professional Rodeo Cowboys Ass'n v. Wilch, Smith & Brock,* 42 Colo.App. 30, 589 P.2d 510 (1978).

Accordingly, the judgment is modified by the addition of $6,304.42 to the amount awarded plaintiff. Furthermore, because the trial court awarded 363.5 days of pre-judgment interest at 8% per annum to the first mortgage interest payments, an additional $502.28 representing pre-judgment interest on the second mortgage interest payments must also be added to the amount awarded plaintiff. The judgment, as modified, is affirmed.

JONES and NEY, JJ., concur.