577 P.2d 302 (1977)
Margaret O. HARRISON, and Pride Electric Company, a Colorado Corporation, Plaintiffs-Appellees,
v.
Jeff ALBRIGHT, Defendant-Appellant.
No. 76-296.
Colorado Court of Appeals, Div. I.
December 1, 1977.
Rehearing Denied January 19, 1978.
Certiorari Denied April 17, 1978.
*303 Shoemaker & Wham, Robert S. Wham, Richard H. Hill, Denver, for plaintiffs-appellees.
C. J. Berardini, Denver, for defendant-appellant.
BERMAN, Judge.
Defendant, Jeff Albright, appeals from an order enforcing a noncompetition clause of a contract and permanently enjoining him from engaging in the electrical contracting business or becoming interested as an officer, stockholder, or employee in any electrical contracting company within a radius of 50 miles of Denver for a period of five years. We affirm.
On June 8, 1972, the defendant and his soon-to-be partner entered into an agreement with the plaintiff, Margaret O. Harrison, in which she agreed to advance to them $50,000 to form an electrical contracting corporation. As part of the security for the loan, the agreement contained the following noncompetition clause:
"Each of us agrees that . . . in the event either of us leaves the employment of the company, the one so leaving will not, without your written consent, engage in the electrical contracting business or become interested in any electrical contracting company as an officer, stockholder or employee, for a period of five years within a radius of fifty miles from the City and County Building, Denver, Colorado."
The corporation, Pride Electric Company, (Pride), was subsequently formed with the defendant and his partner as the sole stockholders. During the next year, the company experienced persistent financial difficulties, defendant's partner resigned transferring sole stock ownership to defendant, and on several occasions, Mrs. Harrison lent the corporation substantial additional funds.
On July 2, 1973, the company's pending insolvency led to a meeting at which the parties agreed that Mrs. Harrison would continue to advance monies to the corporation but, that for her protection, she would contemporaneously purchase sufficient stock to give her a controlling interest in the corporation, which she did.
On December 10, 1974, the defendant left the employ of Pride. Subsequently, he organized another electrical contracting corporation, Albright Electric Co., (Albright Electric) of which he became the sole stockholder. Albright Electric immediately began and continues to do electrical contracting in Denver.
Shortly after Albright Electric's incorporation, plaintiffs commenced this action, seeking damages and injunctive relief for breach of the noncompetition clause in the June 8, 1972, agreement. After a trial to the court, the court dismissed plaintiffs' damages claim and entered the order enforcing the noncompetition clause, from which defendant now appeals.

I.
Defendant first argues that the conduct of the parties subsequent to the agreement's signing manifested their intent to abandon the agreement and that accordingly the trial court erred in concluding that the noncompetition clause was in full force and effect when the defendant left Pride. We disagree.
Although the intent to terminate and abandon a contract may be evidenced by the parties' conduct, See Nahring v. City *304 and County of Denver, 174 Colo. 548, 484 P.2d 1235 (1971), the question of whether a contract has been abandoned is ordinarily one of fact. Atteberry v. Aulick, 204 Okl. 540, 231 P.2d 993 (1951); see Burnford v. Blanning, Colo., 540 P.2d 337 (1975).
Defendant contends that Mrs. Harrison's infusion of additional funds after the July 2, 1973, meeting to support the continued existence of Pride, and the concomitant creation of a new capital structure in the company, necessarily abrogated the parties' original agreement. The trial court, however, found that:
"The most credible evidence indicates that the defendant participated in the refinancing plan of Pride Electric Company, welcomed Mrs. Harrison's help, and used the additional funds in the operation of the company under the new arrangement until he became dissatisfied and voluntarily left Pride Electric Company.
"The court would conclude that the subsequent acts of the parties are not in conflict with the original business contract. . . and that such action reveals only a determined effort to make Pride Electric Company succeed so that plaintiff Margaret O. Harrison's $50,000 loan could be repaid when due."
There is ample evidence in the record to support this conclusion that the July 2 agreement was not in conflict with the original agreement, but only supplementary to it, and thus that conclusion is binding on review. Deas v. Cronin, Colo., 544 P.2d 991 (1976). Accordingly, we conclude the noncompetition clause was in full force and effect.

II.
Defendant further urges that even if the noncompetition clause was in full force and effect when he left Pride, injunctive enforcement of the clause is barred because its provisions are unreasonable as to duration and geographical scope, and because the trial court's dismissal of plaintiffs' damages claim for failure of proof precludes any finding of the requisite irreparable injury. Again, we disagree.
Preliminarily, we note that in 1973, the legislature enacted an amendment to C.R.S. 1963, 80-11-13, voiding a narrowly defined class of noncompetition covenants. Section 8-2-113(2), C.R.S. 1973,[1] provides, in relevant part:
"Any covenant not to compete which restricts the right of any person to receive compensation for performance of skilled or unskilled labor for any employer shall be void, but this subsection (2) shall not apply to:
(a) Any contract for the purchase and sale of a business or the assets of a business;
. . . . .
(d) Executive and management personnel and officers and employees who constitute professional staff to executive and management personnel."
Here, the noncompetition clause was supplied by defendant and his original partner to serve as security for Mrs. Harrison's substantial loan launching Pride. Mrs. Harrison had no expertise which would enable her to operate the company in the defendant's absence. As the trial court found,
"[T]he defendant was the only person who possessed the knowledge, skills, and the licenses to make the business a possible success. This made him the key man and very heart of the business."
In such circumstances, the defendant was a member of the "[e]xecutive and management personnel" of Pride, and accordingly, the noncompetition clause here at issue is exempt from the operation of the statute. Section 8-2-113(2)(d), C.R.S. 1973.
Additionally, the noncompetition clause here is analogous to one ancillary to a "contract for the purchase and sale of a business," § 8-2-113(2)(a), C.R.S. 1973. Mrs. *305 Harrison, as with a purchaser of a business, parted with a substantial sum of money, largely in return for the defendant's pledge not to compete with Pride and thereby to preserve the money-making potential of the invested amounts and insure the company's success. The clause was voluntarily proffered by the defendant, bargained for at arm's length by the parties, and substantial consideration was given for the agreement. Thus, the exemption of § 8-2-113(2)(a), C.R.S. 1973, also places the challenged noncompetition clause outside the statute's intended reach. Accordingly, whether the clause is enforceable remains governed by the existing judicial test of reasonableness. See generally, Krendl & Krendl, Noncompetition Covenants in Colorado: A Statutory Solution?, 52 Den.L.J. 499 (1975).
Numerous appellate decisions have sustained covenants not to compete for terms up to five years and within distances of 100 miles, and the burden of proof as to the reasonableness of such a covenant rests on the party challenging its enforcement. Jim Sprague's Aetna Trailer Sales, Inc. v. Hruz, 172 Colo. 469, 474 P.2d 216 (1970). In light of the circumstances outlined above, we conclude that the defendant has not shown that the five year-fifty mile provisions voluntarily supplied by him are unreasonable.
The same circumstances support the trial court's conclusion that despite the plaintiffs' failure to prove damages, injunctive relief was appropriate.
In Ditus v. Beahm, 123 Colo. 550, 232 P.2d 184 (1951), the Colorado Supreme Court approved, in the context of a noncompetition clause accompanying the purchase and sale of an established business, the rule that irreparable injury is presumed from the breach of such a clause, and that the remedy at law is presumed inadequate. In view of the analogous situation here, and in view of evidence that the defendant and Albright Electric entered into direct competition with the plaintiffs and took several of the plaintiffs' regular customers, the trial court's application of the Ditus rule to presume irreparable injury from defendant's breach of the noncompetition clause was entirely justified.
In so ruling, we reject defendant's contention that the Ditus rule is vulnerable as a violation of due process. Irreparable injury is only presumed from breach of a noncompetition clause. The fact of breach is not conclusive evidence of such injury, and the breaching party is not denied an opportunity to dispel that presumption. See Ditus v. Beahm, supra.
Since the record contains no evidence dispelling the presumption of irreparable injury, we affirm the court's order granting the plaintiffs injunctive relief.
Judgment affirmed.
COYTE and KELLY, JJ., concur.
NOTES
[1] Since defendant has not been restrained from engaging in his occupation by "force, threats, or other means of intimidation," § 8-2-113(1), C.R.S. 1973, (the non-amended portion of the statute), has no application here.