**DBA ENTERPRISES, INC.; William R. Allen; and Dorothy A. Allen, Plaintiffs–Appellees,**

v.

**Lauretta FINDLAY and James Findlay, Individually and d/b/a Acres Green Maintenance, Defendants–Appellants.**

No. 94CA1116.

Colorado Court of Appeals, Div. V.

Jan. 25, 1996.

Rehearing Denied March 7, 1996.

Certiorari Denied Sept. 3, 1996.

Robert J. Cunningham, Englewood, for Plaintiffs–Appellees.

Boris, Nemkov & Jahde, P.C., Larry Boris, Denver, for Defendants–Appellants.

Opinion by Judge ROY.

In this action relating to the sale of a business, defendants, Lauretta and James Findlay (Sellers), appeal from the judgment of the trial court holding that they materially breached a covenant not to compete with plaintiffs, DBA Enterprises, Inc., William R. Allen, and Dorothy Allen (Purchasers), and awarding damages. Sellers, in addition, appeal the denial of their counterclaim to enforce a promissory note given by Purchasers in partial payment for the business. We affirm in part, reverse in part, and remand with directions.

In March 1992, Sellers sold their franchise in Lawn Doctor, Inc. (Lawn Doctor), a lawn fertilization business, to Purchasers. The business sold and applied fertilizer, pesticides, and herbicides under the franchise and provided core aeration services in Littleton and Englewood, Colorado. The sale included all the assets of the business, including the customer list. The total purchase price was $72,500, part of which was paid by a promissory note in the amount of $53,750, payable with interest to Sellers in specified installments. That portion of the purchase price represented by the promissory note was allocated: $29,000 to the customer list, $22,500 to the franchise, and $2,250 for equipment. The balance of the purchase price was cash withdrawn from the business by Sellers and was not allocated.

The assets were transferred by means of a bill of sale that included a covenant not to compete by which Sellers agreed that, until December 31, 1997, they would not provide, directly or indirectly, fertilizers, herbicides, pesticides, or core aeration to lawns within the geographic area described in the Lawn Doctor franchise agreement. In June 1992, at the behest of Lawn Doctor, Purchasers and Sellers executed another covenant not to compete covering the same services, time, and geographic area to replace the original covenant not to compete. The second covenant not to compete provided:

> Seller agrees that, for a period of five (5) years, commencing June 1, 1992, he will not have any interest as an owner, investor, partner, director, officer, employee, consultant, representative or agent, or in any other capacity, in any business or activity involving in substantial part the sale ... of products or services identical to or competitive with the products or services offered by Lawn Doctor businesses.

The original bill of sale provided that the covenant not to compete was "a material part of the consideration for which Buyer has bargained in the transaction effected by this Bill of Sale, and that such covenant is necessary to protect its legitimate business interests." The bill of sale made no provision for liquidated damages nor for a formula for the computation of liquidated damages for breach of the covenant not to compete.

After the sale, and as permitted by the bill of sale, Sellers continued to operate a lawn maintenance business, Acres Green Maintenance (Acres Green), which had been owned and operated separately from the Lawn Doctor franchise. Acres Green provided lawn mowing and trimming services and had many of the same customers served by Lawn Doctor.

In June 1992, Sellers sent a letter to their former customers notifying them that they no longer owned the Lawn Doctor franchise and could no longer provide fertilizer, pesticide, herbicide, or core aeration services, but stating they would continue to offer lawn mowing services through Acres Green. Later, on two occasions, Sellers provided services prohibited by the covenant as an accommodation to two of their Acres Green customers without charge. They also "contracted out" on a pass-through basis such services for two commercial accounts of Acres Green that insisted upon paying one vendor for all lawn care services.

During the summer of 1992, Purchasers lost one-half of the customers on the Lawn Doctor customer list.

In February 1993, Sellers wrote a letter to their Acres Green customers recommending the services of The Greenery, a business owned by an acquaintance, for fertilization or aeration services. The letter, in part, stated: "ACRES GREEN MAINTENANCE AND THE GREENERY will work together to provide you with a healthy green lawn." Both Sellers and the owner of The Greenery signed the letter and participated in the cost of its preparation and mailing. Sellers did not participate in any revenues or profits from the services rendered by The Greenery, and the letter generated only two or three inquiries.

In March 1993, Purchasers discontinued payments on the promissory note, and in May 1993, Sellers resumed the services prohibited by the covenant not to compete and earned approximately $22,000 in gross revenues from such services during the balance of the 1993 season. In August 1993, Sellers sold Acres Green and moved to Florida.

Purchasers commenced this action, alleging among other things breach of contract, tortious interference with contract, and civil conspiracy, and requesting both damages and the cancellation of the promissory note. Sellers counterclaimed on the promissory note, which had an outstanding principal balance of $46,400 as of March 1, 1993, accrued interest, and a provision for attorney fees.

The trial court found that Sellers had materially breached the covenant not to compete, awarded damages equal to the amount due on the promissory note plus $1,000, denied Sellers' counterclaim with respect to the promissory note, but granted Sellers' counterclaim for $265, which represented funds mistakenly paid to and retained by Purchasers.

## I.

Sellers first contend that the trial court erred in finding that they had violated the covenant not to compete. We find no merit in their contention.

The issue of whether a covenant not to compete has been materially breached is a factual, not a legal, one. *See Coleman v. Shirlen,* 53 N.C.App. 573, 281 S.E.2d 431 (1981); *Coxe v. Mid–America Ranch & Recreation Corp.,* 40 Wis.2d 591, 162 N.W.2d 581 (1968).

Our supreme court has adopted the approach of Restatement (Second) of Contracts § 241 (1981) to determine whether a breach of contract is material:

> The extent to which an injured party will obtain substantial benefit from the contract, as well as the adequacy of compensation in damages, should be considered in determining the materiality of failure of performance.

*Converse v. Zinke,* 635 P.2d 882, 887 (Colo. 1981).

Sellers rely on a number of Colorado cases for the proposition that a violation of a covenant not to compete must involve a direct and active resumption of the prohibited activities, a compensated benefit, and a clear intent to compete. *See Sprague's Aetna Trailer Sales, Inc. v. Hruz,* 172 Colo. 469, 474 P.2d 216 (1970); *Zeff, Farrington & Associates, Inc. v. Farrington,* 168 Colo. 48, 449 P.2d 813 (1969); *Mabray v. Williams,* 132 Colo. 523, 291 P.2d 677 (1955); *Ditus v. Beahm,* 123 Colo. 550, 232 P.2d 184 (1951). However, this reliance is misplaced. These cases address the issue of the reasonableness of the covenant not to compete, not whether any alleged conduct constituted a material breach.

In this instance, the trial court found, with support in the record, that the covenant not to compete was materially breached. We are bound by that determination. *See Ruff v. Yuma County Transportation Co.,* 690 P.2d 1296 (Colo.App.1984).

## II.

Sellers next argue that the trial court should not have assessed monetary damages on the evidence presented or, in the alternative, that the trial court improperly determined those damages. We agree and remand for a redetermination of damages.

Covenants not to compete, with some narrow exceptions, are contrary to the public policy of Colorado and are void. Section 8–2–113(2), C.R.S. (1986 Repl.Vol. 3B). The applicable exception in this case is the inclusion of such a covenant in a contract for the purchase and sale of a business. Section 8–2–113(2)(a), C.R.S. (1986 Repl.Vol. 3B).

Injunctive relief is the most common and generally preferred relief for breach of a covenant not to compete. The principal advantage of injunctive relief is that it terminates the prohibited conduct as well as prevents any future damages. In addition, as this case illustrates, past damages may not only be difficult to prove but may well be inadequate to cause the violator to terminate its prohibited activities. Injunctive relief may be available even though no or only nominal damages have been proven. *Ditus v. Beahm, supra.* Here, however, Purchasers seek only past damages for breach of the covenant not to compete.

While there is no direct authority in Colorado, other jurisdictions have held that, absent a valid liquidated damages provision, the breach of a covenant not to compete gives rise to damages for the purchaser's loss of profits attributable to the breach. *See In re Hallahan,* 936 F.2d 1496 (7th Cir.1991) (applying Illinois law); *De Long Corp. v. Lucas,* 278 F.2d 804 (2d Cir.1960); *Robert S. Weiss & Associates, Inc. v. Wiederlight,* 208 Conn. 525, 546 A.2d 216 (1988); *Lawton v. Gorman Furniture Corp.,* 90 Mich.App. 258, 282 N.W.2d 797 (1979); *Special Products Manufacturing, Inc. v. Douglass,* 169 A.D.2d 891, 564 N.Y.S.2d 615 (1991); *see generally* R. Dunn, *Recovery of Damages for Lost Profits* § 2.27 (4th ed.1992); ABA, *Covenants Not to Compete* (A. Pedowitz & R. Sikkel eds. 1991).

Further, other jurisdictions have consistently ruled that damages are not measured by the benefit to the party in breach. *Morris v. Homco International, Inc.,* 853 F.2d 337 (5th Cir.1988); *Robert S. Weiss & Associates, Inc. v. Wiederlight, supra; Ibarra v. Missouri Poster & Sign Co.,* 838 S.W.2d 35 (Mo.Ct.App.1992); *Vermont Electric Supply Co. v. Andrus,* 135 Vt. 190, 373 A.2d 531 (1977).

The purpose of the covenant is not to control the seller's future income, but to prevent the seller from soliciting the buyer's new customers and to protect the good will inherent in the purchase. *See Gibson v. Eberle,* 762 P.2d 777 (Colo.App.1988); 6A A. Corbin, *Contracts* §§ 1385, 1387 (1962); 14 S. Williston, *Contracts* § 1636 (3d ed. 1972).

In *Runiks v. Peterson,* 155 Colo. 44, 392 P.2d 590 (1964), the plaintiff sued to enforce a covenant not to compete contained in a contract for the sale of a business. The trial court granted an injunction, but refused to award damages because they were too speculative when premised on evidence that plaintiff's gross revenues decreased 10% during the period of competition. The supreme court affirmed, holding that the damages must be traceable to and a direct result of the wrong sought to be redressed and that, based on the record, it could not conclude that the trial court erred as a matter of law. *See also Graphic Directions, Inc. v. Bush,* 862 P.2d 1020 (Colo.App.1993).

Here, Purchasers attempted to prove their damages by three methods. The first was the value of the services Sellers performed without compensation or subcontracted out in 1992 and the gross revenues that would normally flow from those services, approximately $1,000. The second was the gross revenues, $22,000, for services performed during the summer of 1993 after the promissory note went into default. Finally, there was testimony that gross revenues for the Lawn Doctor franchise were down considerably from those represented at the time of sale. It would appear that the trial court accepted the first method in its computation of a part of the damages awarded.

The trial court, in both its oral and written findings, expressed substantial concern with the state of the evidence with respect to damages. It indicated that it was unclear whether Purchasers had lost business because of their own actions or the breach by Sellers. Accordingly, the court declined to award compensatory damages for tortious interference with contract and civil conspiracy.

The trial court awarded compensatory damages of $1,000 in addition to the balance due on the promissory note. However, the evidence supporting this finding is, presumably, the gross receipts for the services rendered by Sellers in 1992, an inappropriate measure.

We conclude that the trial court utilized an incorrect standard in measuring damages for breach of the covenant not to compete. Therefore, the matter must be remanded for further proceedings on the issue of damages.

### III.

Sellers brought three counterclaims, the first of which related to a promissory note representing a portion of the purchase price payable to them in the initial principal amount of $53,750. In its written findings, the trial court stated that: "The major part of the damages [for breach of the covenant] . . . was equivalent to the balance that would otherwise be owed on the [Purchasers'] note to [Sellers]." The trial court then entered judgment in the amount of $1,000 less $265 awarded on one of Sellers' other counterclaims, or $735, and dismissed the counterclaim premised on the promissory note with prejudice. Sellers appeal that dismissal. We conclude that remand is necessary for reconsideration of the court's ruling.

In its oral findings, the trial court found that Sellers had failed to establish the promissory note claim by a preponderance of the evidence. However, with the exception of the allegations concerning a default and amount owing, Purchasers admitted the allegations in the promissory note counterclaim in their reply. Further, Sellers introduced unchallenged evidence that Purchasers did not pay the March 1993 and subsequent payments, that the principal balance due as of March 1, 1993, was $46,300, and that they had entered into a contingency fee agreement with counsel in which they agreed to pay one-third of the amount collected as attorney fees. Moreover, the original promissory note was admitted into evidence without objection.

Under this state of the record, we conclude that Sellers, as a matter of law, presented an unchallenged prima facie case with respect to the promissory note. *See Smith v. Wein-*

*drop,* 833 P.2d 856 (Colo.App.1992). However, additional language in the note precludes disposition of the counterclaim on the basis of the prima facie case alone.

The promissory note in question here contains the following statement: "Maker's obligation under this note is subject to the conditions recited in that Bill of Sale and Covenants not to Compete between the parties of even date." To be a negotiable instrument a promissory note must be an unconditional promise to pay a sum certain. Section 4-3-104, C.R.S. (1995 Cum.Supp.). The quoted statement in the note renders it conditional and, therefore, nonnegotiable. But, the language does not make the note unenforceable. *See* § 4-3-106, C.R.S. (1995 Cum. Supp.).

The bill of sale to which the promissory note refers, while calling for a promissory note as a portion of the purchase price, is silent as to the terms of the promissory note. The evidence at trial made no reference to the intention of the parties in including the conditional language in the promissory note. Therefore, although Sellers have otherwise demonstrated a right to recover under the note the matter must be remanded to the trial court for a determination as to the intent of the parties, if any, concerning the effect of the conditional language contained in the promissory note.

We note for the purposes of remand that the bill of sale makes no provision with respect to damages for any breach of its terms. The measure of damages for the breach of the covenant not to compete bears no logical relationship to the amount due on the promissory note at any given time.

In our opinion, the conditional language of the note is not, without more, the equivalent of a liquidated damages provision. In addition, a liquidated damages provision which amounts to a penalty is not enforceable. *See H.M.O. Systems, Inc. v. Choicecare Health Services, Inc.,* 665 P.2d 635 (Colo.App.1983) (liquidated damages measured by outstanding balance of a promissory note plus ten percent a penalty and not enforceable). Therefore, absent a failure of consideration, any actual damages proven by Purchasers may be offset against the outstanding balance owing on the promissory

note with appropriate adjustments to the outstanding balance and interest.

The trial court, in addition, may separately consider whether the breach of the covenant not to compete constitutes such a failure of consideration as to excuse payment of the promissory note. *Converse v. Zinke, supra.* In determining whether there has been a complete failure of consideration, the trial court may consider, *inter alia,* that the parties allocated only $29,000 to the customer list in the first instance and that Purchasers lost a substantial number of the customers prior to any breach. Further, the parties allocated $22,000 to the franchise and $2,250 to the equipment, both of which items have been retained by Purchasers.

The portion of the judgment consisting of the findings and conclusions of the trial court that Sellers materially breached the covenant not to compete is affirmed. That portion of the judgment awarding damages to Purchasers for breach of the covenant not to compete and the dismissal of Sellers' counterclaim on the promissory note are reversed and the cause is remanded for further proceedings in accordance with the views expressed herein.

DAVIDSON and CASEBOLT, JJ., concur.