**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 27 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ELECTRICAL DISTRIBUTORS, INC., also known as EDI, Inc.,

      Plaintiff-Counter-Defendant-Appellant/Cross-Appellee,

v.

SFR, INC., QED, INC.,

      Defendants-Counterclaimants-Third Party Plaintiffs-Appellees/Cross Appellants,

STEVEN R. HEAPS,

      Defendant-Cross-Claimant-Appellee,

v.

RONALD MITCHELL and B. JON MITCHELL,

      Third Party Defendants-Appellants/Cross-Appellees.

Nos. 96-4198
97-4009
97-4070

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 95-CV-870)**

---

Submitted on the briefs:[*]

Jackson Howard and Leslie W. Slaugh of Howard, Lewis & Petersen, Provo, Utah, for Electrical Distributors, Inc., Ronald Mitchell, and B. Jon Mitchell.

Paul S. Felt and James L. Wilde of Ray, Quinney & Nebeker, Provo, Utah, for SFR, Inc. and QED, Inc.

P. Bruce Badger of Fabian & Clendenin, Salt Lake City, Utah, for Steven R. Heaps.

---

Before **HENRY, HOLLOWAY,** and **LUCERO,** Circuit Judges.

---

**HOLLOWAY,** Circuit Judge.

---

Appellants/Cross-Appellees Electrical Distributors, Inc. (EDI) brought suit in Utah state court against SFR, Inc. to enforce a promissory note and alleging breach of contract. SFR removed the case to the United States District Court for the District of Utah on diversity grounds, filing a counterclaim against EDI and a third-party complaint against Duff Mitchell and Jon Mitchell, alleging breach of a purchase agreement contract, unjust enrichment, a claim for accounting and a right to indemnity. Steven Heaps intervened, seeking declaratory

---

[*]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause therefore is ordered submitted without oral argument.

relief against EDI that he was entitled to a one-third share of a promissory note issued by SFR and naming EDI as the payee. After inconclusive summary judgment proceedings, the case was tried to the court and judgment was entered on October 4, 1996, on a memorandum decision and order of September 24, 1996. I App. at 140..

EDI and Jon Mitchell filed a timely motion to amend conclusions of law which the district judge denied. The judge also entered an order awarding attorney fees to Duff Mitchell. Both the EDI appellants and the cross-appellants, SFR, et al., have timely appealed the judgment. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## I

### The Factual Background

The district judge made detailed findings and conclusions in her Memorandum Decision and Order following the bench trial. 1 App. at 124-136. She found that the suit originated in the District Court of Utah County, Utah, and was removed to the federal district court on September 25, 1995. Id. at 124. Defendant SFR shortly filed a counterclaim against EDI, alleging breach of contract, unjust enrichment, a claim for accounting and a right to indemnity. SFR also filed a third-party complaint against Duff Mitchell and R. Jon Mitchell, alleging the same causes of action. In July 1996, Steven R. Heaps intervened and filed a complaint against SFR for declaratory relief and a cross-claim against EDI for declaratory relief and alleging breach of the covenant of good faith, *inter alia*. Heaps also filed a third-party complaint against Duff and Jon Mitchell. In August 1996 the court realigned

Heaps as a defendant. Id. at 132.

The judge found the background facts as follows. EDI is a Utah corporation with its principal place of business in Salt Lake County. Duff Mitchell, Jon Mitchell and Steven Heaps are residents of Utah. SFR is a Colorado corporation doing business under the name QED, Inc. SFR does business in Utah. EDI is a close corporation in the wholesale electrical supply business, whose ownership was divided among five shareholders, Joseph Timmons and Duff Mitchell each holding 40% of the issued stock. Duff Mitchell's initial investment was in the form of goodwill valued at $100,000. Steven Heaps and Jon Mitchell each held 8% of EDI's issued stock, both having made an initial $20,000 investment. Jerry Lees held 4% of the issued stock of EDI. Duff Mitchell was president of EDI, and the two Mitchells and Heaps worked for the company. Lees and Timmons were never employees of EDI.

SFR is a close corporation in the wholesale electrical supply business. It had two shareholders, Dean Stauffer, SFR's President, and Tom Foley. SFR wanted to become a full-line distributor of electrical products in the Salt Lake City area. SFR determined it could do this through a purchase of EDI. SFR initiated telephone conversations and meetings with representatives of EDI. Initial negotiations involved Stauffer for SFR and Duff Mitchell for EDI. Id. at 125. Later, Jon Mitchell and Steven Heaps were included in the discussions.

The negotiations culminated in execution of an "Asset Purchase Contract" (the Purchase Contract) dated May 17, 1993. 2 App. at 780, *et seq.* Dean Stauffer signed the Purchase Contract for SFR and Duff Mitchell signed for EDI. In addition, Duff Mitchell, Jon

Mitchell and Steven Heaps signed as "individual sellers." The purchase price included four components: (1) an initial payment of $10,000 by SFR; (2) a subsequent payment of $240,000 by SFR on the closing date; (3) EDI's right to retain and collect aged accounts receivable up to $470,000; and (4) a percentage of future net profits generated by EDI as determined by a contractual schedule, varying from 80% down to 10% of the profits during stated periods. Id. at 126.

Included in the Purchase Contract was a covenant not to compete binding the individual sellers. Duff and Jon Mitchell and Steven Heaps agreed that for a period of seven years they would not, directly or indirectly, engage in the sale of electrical supplies in Utah, except as employees of SFR. The Purchase Contract provided that its terms and conditions were governed by Colorado law. Id. at 126.

Following execution of the Purchase Contract, SFR, the Mitchells and Heaps entered into a "Consulting Agreement." It was not signed by SFR; however, Stauffer testified he intended SFR to be bound by that agreement and a copy signed by the Mitchells and Heaps was retained by SFR. Id. at 127.

Paragraph 1 of the Consulting Agreement contained a profit-sharing provision identical to that of the Asset Purchase Contract except that payments were to be made to Duff Mitchell, Jon Mitchell and Heaps. Trial testimony indicated that this profit-sharing provision was not intended to replace or supplement the provision contained in the Purchase Contract. Paragraph 7 of the Consulting Agreement provided that payments under the profit-sharing

provision were to continue, notwithstanding termination or resignation of Duff Mitchell, Jon Mitchell or Steven Heaps. Id. at 127.

Following the sale, the Mitchells and Heaps became salaried employees of SFR. Duff Mitchell received $52,000 of the $250,000 paid to EDI under the Purchase Contract. The remaining balance was used to retire EDI stock held by Jon Mitchell, Heaps, Timmons and Lees. After the Purchase Contract and Consulting Agreement were signed and the $250,000 initial payment had been dispersed by EDI, Duff Mitchell became the sole officer and shareholder in EDI. Id. at 127. The Mitchells and Heaps agreed that any net profits received would be shared equally among them.

Because of a discrepancy indicated by a December 1993 inventory between EDI's book inventory and its physical inventory, no profit-sharing payments under the Purchase Contract or the Consulting Agreement were paid to Duff Mitchell, Jon Mitchell or Heaps in 1993 or 1994.

Although he was not obligated by the Purchase Contract or Consulting Agreement to do so, Stauffer testified he renegotiated with the Mitchells and Heaps because he viewed their expertise as critical to the EDI/SFR venture and he feared that they would leave SFR if there continued to be no profit-sharing payments. Id. at 128. In January 1995, Duff Mitchell acted as a spokesman for Jon Mitchell and Heaps and accepted an alternative to the profit-sharing plan whereby SFR would pay $750,000, evidenced by a promissory note, with monthly payments of $10,000 for 75 months. EDI was the named payee under the note and

was to receive monthly payments from January 31, 1995, to March 31, 2001. Id. at 128-29. Stauffer testified that the note was intended to replace the profit-sharing provisions of the Purchase Contract and the Consulting Agreement, and the Mitchells and Heaps, not EDI, were to receive the note proceeds. Duff Mitchell told Stauffer that the note proceeds would be shared equally by Duff Mitchell, Jon Mitchell and Heaps. Id. at 129.

There was conflicting evidence regarding the effect of the $750,000 note on the Purchase Contract. Heaps testified he believed the note replaced only the profit-sharing provision, leaving the rest of the Purchase Contract, including the covenant not to compete, intact. Id. at 129. Heaps said that had the note replaced the entire Purchase Contract, Timmons and Lees would have shared in the note proceeds. Dean Stauffer also testified that the note replaced only the profit-sharing provision of the Purchase Contract. Duff and Jon Mitchell testified the note replaced the entire Purchase Contract, abrogating the covenant not to compete. The court found Stauffer's and Heaps's testimony (that the note replaced only the profit-sharing provision) was more credible. Id. at 129.

The judge found that shortly after receiving the $750,000 note, Duff Mitchell prepared a "sham note." This second document changed the principal sum to $550,000, shortened the note term to July 31, 1999, and reduced the number of monthly payments to 55. The document was found to bear a forged signature of Dean Stauffer. The judge found that evidence presented at trial indicated that Duff Mitchell created the second note because he believed he was entitled to more than a one-third share of the $750,000 note. Duff Mitchell

represented to Jon Mitchell and Heaps that the fake $550,000 note was, in fact, the note received from SFR. Duff Mitchell delivered a copy of the phony note to Heaps, and Duff Mitchell never disclosed to SFR his creation of the $550,000 note, his representations to Jon Mitchell and Heaps, or his delivery of the sham note to Heaps. Both Jon Mitchell and Heaps subsequently learned of the existence of the original $750,000 note, which remains in its original condition. The judge found that the $750,000 note has never been altered or changed, and no writing or marking has been made on it. Id. at 130.

The judge found that for at least five months after the $750,000 note was signed, SFR issued checks naming EDI as payee for payments on that note. SFR gave those checks to Duff Mitchell, and with one exception he dispersed equal one-third shares to Jon Mitchell and Heaps. EDI retained none of those note proceeds. The total amount paid by SFR under the note was found to be $57,291.34. Heaps testified the monies received by him on the note were declared as repayments of loans made by him to EDI, rather than as income, for federal income tax purposes.

The trial judge's conclusions of law stated that jurisdiction over the main claims in the case was proper on diversity grounds, 28 U.S.C. § 1332, and that jurisdiction over the claims of Heaps, realigned as a defendant, was proper on supplemental jurisdiction grounds, 28 U.S.C. § 1367. 1 App. at 132.

The judge concluded that by its terms the Purchase Contract is "governed by and construed under the laws of the State of Colorado." 1 App. at 132. She concluded the

- 8 -

profit-sharing provision of the contract was valid consideration for the covenant not to compete, binding Duff Mitchell, Jon Mitchell and Steven Heaps. SFR, the Mitchells and Heaps intended that the proceeds under the profit-sharing provision would flow to the Mitchells and Heaps. Id. at 132.

The judge held the $750,000 note was not a complete integration; the note modified and replaced the profit-sharing provision. For the note, the Mitchells and Heaps gave up all rights to future profit-sharing. The lack of a complete integration permitted consideration of the parol evidence of the testimony of Stauffer and Heaps that the note was intended only to replace paragraph 2.4 of the Purchase Contract (on profit sharing) and the note was not a complete integration. Id. at 133.

The judge concluded that under Colo. Rev. Stat. Ann. § 4-3-110, Stauffer's intent was controlling that the note was payable to the Mitchells and Heaps, and EDI could not reasonably be considered the payee on the note. The Mitchells and Heaps agreed among themselves on equal sharing of payments on the $750,000 note. The course of conduct by them evidences this agreement. Id. at 134.

In her conclusions the judge stated that the "validity of the Purchase Contract's covenant not to compete is not at issue in this case." 1 App. at 134. She said, however, the covenant is valid under Colorado law, citing Colo. Stat. § 8-2-113(2)(a) and (d), and cases.

Id.[1]  Rather, she said the court was asked to determine whether the provision was a bargained-for term of the Purchase Contract, which she held it was.

The judge concluded the sham note prepared by Duff Mitchell neither affected the validity of the original note nor was a breach that extinguished his right to collect his one-third of the $750,000 note.  Id. at 134-35.  There was no evidence the sham note was presented to SFR or that it knew of the note when it ceased payments to Duff Mitchell on the genuine note.  The judge concluded that regardless of whatever effect the sham note may have had on the contractual relation of the Mitchells and Heaps, it had no effect on SFR's obligations on the $750,000 note.  Id. at 135.

The judge concluded there was no conduct by Duff Mitchell constituting a breach of the covenant not to compete and he was entitled to the entire accelerated $250,000 sum due him on the $750,000 note less amounts received, prejudgment interest and attorney fees.  Id. at 135.  She held that Jon Mitchell breached the covenant not to compete when he entered the employ of Codale, a direct competitor of SFR, and was not entitled to continued

---

[1]The district court stated in its conclusions of law that the "validity of the Purchase Contract's covenant not to compete is not at issue in this case."  1 App. at 134.  However, the court continued by noting in a footnote that "the covenant is valid under Colorado law. See Colo. Stat. § 8-2-113(2)(a) & (d) . . . ."  1 App. at 134.  We believe EDI, in its closing argument, properly raised the issue of the validity of the covenant to the district court. 3 App. at 735-39.  The court acknowledged that the issue of the validity of the covenant was before the court by questioning counsel for SFR during SFR's closing argument: "I'll tell you what worries me about [the covenant], Mr. Wilde.  It does seem to be very restrictive.  Seven years is a long time, and it does seem to cover by its terms any sort of business . . . [w]hat is your answer to that . . . ."  3 App. at 760.

payments on the $750,000 note. Steven Heaps had not breached the covenant not to compete and was entitled to his monthly one-third of the note proceeds for the remainder of the note term so long as he abided by the covenant not to compete. SFR was held not to have established with the required certainty damages from actions of the Mitchells or EDI. Id. at 136.

The judge ordered that EDI's claims against SFR are denied; SFR's counterclaims against EDI are denied; SFR's third-party claims against Duff Mitchell are denied; SFR is ordered to pay Duff Mitchell the accelerated balance of $250,000 on the note less amounts received, plus prejudgment interest and attorneys' fees. Id. at 136.

SFR's third-party claim against Jon Mitchell for breach of contract was granted and SFR was excused from payments on the note from the date of his employment with Codale Electrical Supply and other SFR claims against Jon Mitchell were denied. Heaps's claims for declaratory relief against SFR and EDI were granted and SFR is to continue monthly payments to Heaps on the $750,000 note so long as he does not breach the covenant not to compete. Heaps's other claims against EDI were denied. Id. at 137.

We turn now to the issues presented by these appeals.

## II

## Analysis

## A

## The Covenants Not to Compete

Appellant EDI first contends the district court erred in ruling that Jon Mitchell breached his covenant not to compete and that this alleged breach excused SFR's payment on the promissory note. We review findings of fact for clear error, O'Connor v. R.F. Lafferty & Co., 965 F.2d 893, 901 (10th Cir. 1992), and conclusions of law *de novo*, EEOC v. Wiltel, Inc., 81 F.3d 1508, 1513 (10th Cir. 1996). Our analysis must cover three issues: first, whether the covenant not to compete constituted consideration for the promissory note; second, whether the covenant not to compete was enforceable and, if so, whether Jon Mitchell breached it; and third, if the covenant not to compete binding Jon Mitchell is valid, whether the fact that SFR suffered no pecuniary loss due to Jon Mitchell's breach of the covenant not to compete defeats SFR's claim against Jon Mitchell as a matter of law.

**1**

**Whether the Covenants Not to Compete Constituted Consideration**

**for the Promissory Note**

The district court did not make an explicit finding that the covenants not to compete constituted consideration for the promissory note. The judge did find that the promissory note replaced only the profit-sharing provision of the Purchase Contract. Memorandum Decision and Order; 1 App. at 129. The judge then concluded that the profit-sharing provision of the Purchase Contract constituted valid consideration for the covenants not to compete. Id. at 132. Thus, the district court implicitly found the covenants not to compete constituted consideration for the promissory note.

EDI argues that the judge erred in concluding the covenant was consideration for the promissory note. This was because the Purchase Contract allocated $10,000 of the purchase price paid by SFR for the covenants not to compete. EDI says that because the contract is unambiguous with respect to the covenants' consideration, the district court's reliance on extrinsic evidence to support its implicit finding violated the parol evidence rule. We disagree.

Under Colorado law,[2] we must construe the Purchase Contract to effectuate the manifest intent of the parties. See Quad Constr., Inc. v. WM. A. Smith Contracting Co., Inc., 534 F.2d 1391, 1394 (10th Cir. 1976). We ascertain the parties' intent at the time of the contract's execution and attempt to determine the parties' intent from the face of the document. New York Life Ins. Co. v. K N Energy, Inc., 80 F.3d 405, 411 (10th Cir. 1996).

The primary inquiry here is whether the allocation provision in the Purchase Contract unambiguously defines the consideration for the covenants not to compete. If a provision in a contract is unambiguous, the parol evidence rule bars admission of any extrinsic evidence that contradicts or modifies the unambiguous provision. See Boyer v. Karakehian, 915 P.2d 1295, 1299 (Colo. 1996)(en banc)("In the absence of allegations of fraud, accident, or mistake in the formation of the contract, parol evidence may not be admitted to add to,

---

[2]We apply Colorado law on this issue pursuant to the choice of law provision stated in the Purchase Contract. See Part II, section A(2), infra, for further discussion of choice of law principles and our reasons for considering Utah law on the issue of validity of the covenants not to compete.

subtract from, vary, contradict, change, or modify an unambiguous integrated contract.").[3]

However, the parol evidence rule does not bar extrinsic evidence which clarifies or explains ambiguous provisions in an agreement. See Colorado Interstate Gas Co. v. Chemco, Inc., 833 P.2d 786, 789 (Colo. App. 1992),   aff'd 854 P.2d 1232 (Colo. 1993). Under Colorado law, to determine if a particular provision is ambiguous, "the language of the agreement must be construed by application of the accepted meaning of the words with reference to all its provisions. The nature of the transaction which forms the contract subject matter must also be considered." Stegall v. Little Johnson Assoc., Ltd., 996 F.2d 1043, 1048 (10th Cir. 1993)(quoting In re Marriage of Thomason, 802 P.2d 1189, 1190 (Colo. App. 1990). The determination of whether a contract is unambiguous is a question of law which we review *de novo*. Stegall, 996 F.2d at 1048.

We are persuaded that the allocation provision in the Purchase Contract is ambiguous with respect to consideration for the covenant not to compete. From the face of the document we cannot determine whether allocation of the purchase price was intended to define precisely the consideration for the assets of EDI or was intended for some other purpose (*e.g.*, tax consequences). See May v. Oakley, 407 N.W.2d 569, 570 (Iowa 1987)(allocation provision in contract intended to provide tax advantages); see also Darlene

---

[3]The parol evidence rule is a rule of substantive law. In re Continental Resources Corp., 799 F.2d 622, 626 (10th Cir. 1986). Under the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64 (1938), we must apply state law. See Klein v. Grynberg, 44 F.3d 1497, 1503 n.4 (10th Cir. 1995).

A. Smith, Patrick Hennessee, and Clifford Hutton, 46 Tax'n for Acct. 290, 291 (1991)("Knowledgeable buyers and sellers often insist that a purchase contract contain an allocation of the purchase price to the various assets purchased. When an allocation is respected, it gives guidance to the parties as to the tax consequences of the transaction."). Moreover, under Colorado law consideration is a contractual element which need not be in writing and "may be proved by parol evidence or inferred." Crossroads West Ltd. Liability Co. v. Town of Parker, 929 P.2d 62, 64 (Colo. App. 1996); see also Berta v. Rocchio, 369 P.2d 51, 54 (Colo. 1962)("failure of consideration for a promissory note may be shown by parol where the action is between the parties to the note.").

Because the allocation provision is ambiguous with respect to the consideration for the covenants not to compete, the district court was permitted to rely on extrinsic evidence to assist it in ascertaining whether the covenants not to compete constituted consideration for the promissory note.

We are not persuaded the district court committed clear error in implicitly finding that the covenants not to compete constituted consideration for the promissory note. As noted above, the record indicates that the promissory note substituted for the profit-sharing provision in the Purchase Contract. The district court's finding that the profit-sharing provision was consideration for the covenants not to compete is supported by the record.

2 App. at 414 (testimony of Jon Mitchell); at 445 (testimony of Dean Stauffer).[4]

## 2

### Whether the Covenant Not to Compete Binding Jon Mitchell Is Enforceable

The district court held that under Colorado law all of the covenants not to compete contained in the Purchase Contract were valid and enforceable. The court further held that because Jon Mitchell went to work for Codale, a direct competitor of SFR, he breached his covenant not to compete, excusing SFR from making payments to Jon Mitchell on the note. We disagree with the district court's methodology in its choice of Colorado law, although we agree with the ruling upholding the covenant's validity.

EDI argues that the district court erroneously applied the law of Colorado in determining the validity of the covenants not to compete. We review a district court's determination as to which state's law applies *de novo*. See Johnson v. Continental Airlines Corp., 964 F.2d 1059, 1060 (10th Cir. 1992); see also Salve Regina College v. Russell, 499 U.S. 225, 231 (1991)(district court's determination of state law reviewed *de novo*). We agree the district court erred in its analysis for applying the law of Colorado.

---

[4]We note the general rule that a promise of one party to a contract will presumably provide consideration for any and all of the promises of the other party to the contract. See 3 Williston on Contracts (4th ed.) § 7:49, p. 761 ("if the performances or promises on one side fulfill the legal requirements of consideration, they will support any number of counterpromises on the other."). Thus even if we were to agree with EDI that the $10,000 allocation was consideration for the covenants not to compete, we can infer from the entire contract and the nature of the transaction that the profit-sharing provision was also consideration for the covenants not to compete.

It is well-settled that in "making a choice of law determination, a federal court sitting in diversity must apply the choice of law provisions of the forum state in which it is sitting." Shearson Lehman Bros., Inc. v. M & L Inv. , 10 F.3d 1510, 1514 (10th Cir. 1993)(citing Klaxon Co. v. Stentor Elec. Mfg., 313 U.S. 487, 496 (1941)). Because the district court's forum state is Utah, the district court was required to apply Utah's choice of law principles.

Shearson is instructive. We there held that

We believe that Utah, like other jurisdictions, would look to general contract principles to resolve the question of whether parties can stipulate to choice of law in their contract. It is generally recognized that:

> [t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties [sic] choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws, § 187 (1971 & 1988 Revisions).

Shearson, 10 F.3d at 1514-15.

Here the parties agreed that Colorado's law would govern their contractual rights and duties. 3 App. at 787. Colorado has a substantial connection to the contract because SFR is a Colorado corporation with its principal place of business in Colorado. However, we believe that Utah has a materially greater interest in the resolution of the issue because

important policy considerations of Utah are involved in assessing the validity of the covenant not to compete prohibiting Jon Mitchell, a Utah resident, from having employment in the wholesale electrical supply business for a period of seven years within the entire state of Utah. We are convinced that the district court should have applied Utah law to determine whether the covenant not to compete contradicts a fundamental policy of Utah. If enforcing the covenant does not contradict a fundamental policy of Utah, then consideration of Colorado law, as chosen by the parties, would be appropriate. See Shearson, 10 F.3d at 1014-15.

Under Utah law, covenants not to compete must comply with requirements noted in System Concepts, Inc. v. Dixon, 669 P.2d 421, 425-26 (Utah 1983), that: (1) the covenants are supported by consideration; (2) no bad faith is shown in the negotiation of the contract; (3) the covenants are necessary to protect the goodwill of the business; and (4) the covenants are reasonable in their restrictions as to time and area. See also Allen v. Rose Park Pharmacy, 237 P.2d 823, 828 (Utah 1951). The party seeking to enforce a covenant not to compete must also show that the services rendered by the employee were special, unique or extraordinary. See also Allen, 237 P.2d at 828. Utah has held that a covenant is valid which protects goodwill as well as trade secrets. System Concepts, 669 P.2d at 426; Robbins v. Finlay, 645 P.2d 623, 627-28 (1982).

Allen involved a covenant not to compete which was ancillary to an employment contract. The covenant binding Jon Mitchell is ancillary to a sale of business contract.

- 18 -

Covenants not to compete connected with a sale of a business are not strictly construed against the party seeking to enforce them. See Roto-Die Co., Inc. v. Lesser, 899 F. Supp. 1515, 1519 (W.D. Va. 1995)("Virginia law recognizes that the law applicable when a sale of a business is involved is somewhat different."); Clein v. Kapiloff, 98 S.E.2d 897, 899 (Ga. 1957); Amex Distrib. Co., Inc. v. Mascari, 724 P.2d 596, 600 (Ariz. App. 1986); Harrison v. Albright, 577 P.2d 302, 305 (Colo. App. 1977)("the burden of proof as to the reasonableness of such a covenant rests on the party challenging its enforcement."); 54A Am. Jur.2d § 849 at 161("Covenants not to compete which are ancillary to the sale of a business, in contrast to those ancillary to an employment contract, are not disfavored and are not strictly construed against the covenantee."). Because the covenant binding Jon Mitchell was ancillary to the sale of EDI's business, we are persuaded that the burden lies with EDI and Jon Mitchell to show the covenant was invalid. We are persuaded that Jon Mitchell has not met his burden to show his covenant was invalid.

We note that the covenant does satisfy the first three System Concepts and Allen requirements. First, the covenant was supported by consideration. Second, there is no evidence cited in the record, and the parties do not suggest, any bad faith in the negotiations over the covenant. Third, the record does indicate that the covenant was necessary to protect the goodwill of the business. 1 App. at 128, 134; 2 App. at 454-55.

The remaining question is whether the covenant is reasonable in scope. "Restrictive covenants are generally upheld by the courts where . . . no greater restraint is imposed than

is reasonably necessary to secure such protection." Allen, 237 P.2d at 826; see also Restatement (2d) Contracts § 188. "The reasonableness of the restraints in a restrictive covenant is determined on a case-by-case basis, taking into account the particular facts and circumstances surrounding the case and the subject covenant." System Concepts, 669 P.2d at 427. "Of primary importance in the determination of reasonableness are the location and nature of the employer's clientele." Id.; see also Presto-X-Co. v. Beller, 568 N.W.2d 235, 240 (Neb. 1997)(court must look to the record for evidence which establishes the particular covenant not to compete "was a reasonable and necessary means of protecting the legitimate business" of the buyer).

We first consider the reasonableness of extending the covenant to cover all of the State of Utah. "Ordinarily, a covenant is enforceable if it specifies an area no greater than that to which the business extends, and it is unenforceable if it specifies a territory broader than encompassed by the purchased business." 54A Am. Jur.2d § 861 at 169.

The fact that the covenant here covers the entire State of Utah does not render the covenant per se unreasonable. In System Concepts, the Utah Supreme Court held that a covenant not to compete that lasted two years and restricted employees from rendering services to competitors in the cable television industry was valid and enforceable despite the fact that it had no territorial limitation. Id. The Utah court reasoned that because the particular cable industry was not local in nature and contained only 2,500 customers, the covenant "is impliedly limited to the area in which [the plaintiff] has been and is seeking its

market." Id.; see also Colonial Life & Accident Ins. Co. v. Kappers, 488 P.2d 96, 97 (Colo. App. 1971)(territory consisting of entire state covered by covenant was reasonable because it was realistically related to insurance agent's contacts while employed by insurer); Fogle v. Shah, 539 N.E.2d 500, 503-04 (Ind. App. 1989)(twelve-state restriction reasonable in light of customer contacts in the states); compare South Bend Consumers Club, Inc. v. United Consumers Club, Inc., 572 F. Supp. 209, 214 (N.D. Ind. 1983)(fifteen-state restriction unreasonable because party restricted by covenant had operated in only one state and thus posed no threat of injury to goodwill).

Here the record indicates that SFR's clientele was not limited to customers in Salt Lake City but that the customers were also located in other areas of the State. 2 App. at 474-75 (Dean Stauffer testified that there were customers in Park City and Toole). Steve Lattora, the operations manager for QED/EDI in Salt Lake City, testified that the company had customers in several locations, including Hill Air Force Base, Ogden, Centerville, Toole, St. George, Cedar City and Blanding. 3 App. at 672-73. However, the record does not indicate where the bulk of the customers were located. Nevertheless, we feel that the geographical extent of the covenant was not shown to be unreasonable.

We also will consider the seven-year length of the covenant for reasonableness. "A restraint as to time must be necessary in its full extent for the protection of some legitimate interest of the promisee, and it must not be unduly harsh and oppressive to the covenantor." 54A Am. Jur.2d § 862 at 170. EDI has cited no Utah authority showing that such a

seven-year restriction is unreasonable. In the circumstances before us, including the length of the period when the payments on the note were due, we feel that the seven-year restriction was reasonable. Cf. Valley Mortuary v. Fairbanks, 225 P.2d 739, 743 (Utah 1950)(twenty-five year covenant ancillary to sale of business valid and enforceable); DBA Enter. v. Findlay, 923 P.2d 298, 301 (Colo. App. 1996)(five years plus term of covenant was reasonable); Bicycle Transit Auth., Inc. v. Bell, 333 S.E.2d 299, 304 (N.C. 1985)(seven-year covenant reasonable).

In sum, we feel that Jon Mitchell did not carry his burden to indicate that the covenant not to compete was unreasonable and invalid, and we agree with the trial judge's conclusion that the covenant was valid.

Thus enforcing the covenant does not violate a fundamental policy of Utah. Therefore, under Utah's choice of law principles, applying the law of the state chosen by the parties in their contract is permissible. See Shearson, 10 F.3d at 1014-15. Here, the parties contracted that the law of Colorado applies. Colorado has by statute declared that covenants not to compete ancillary to the sale of a business are valid and enforceable. Colo. Rev. Stat. Ann. § 8-2-113(2)(a). Like Utah, Colorado courts have interpreted Colorado law to require a rule of reasonableness with regard to the temporal and geographic scope of the covenant. See National Graphics Co. v. Dilley, 681 P.2d 546 (Colo. App. 1984). We are satisfied that the covenant has not been shown to be unreasonable or invalid and we thus hold it is enforceable under Colorado law, as adopted by the parties.

**3**

**The Effect of the Lack of Damages Caused by Jon Mitchell's Breach**

The district court found that even though Jon Mitchell worked for a direct competitor of SFR, in violation of the covenant not to compete, his violation did not cause any damage to SFR's business. Jon Mitchell asserts that because he did not cause any damage to SFR, SFR is not excused from making payments on the promissory note. We disagree.

Under Colorado law, a material breach of a contract excuses the other party's performance.[5] See DBA Enter., 923 P.2d at 303-04. Whether a term of a contract has been materially breached is a question of fact which we review for clear error. See DBA Enter., 923 P.2d at 301 (holding that there was no clear error in finding a breach of a covenant not to compete was a material breach). The district court here did not expressly find the covenant not to compete was a material term of the Purchase Contract. However, we must infer the district court did find the covenant to be a material term of the Purchase Contract because the court below made a specific ruling that Jon Mitchell breached the covenant which excused SFR from paying Jon Mitchell on the promissory note. 1 App. at 183 (citing Converse v. Zinke, 635 P.2d 882, 887 (Colo. 1981)). Thus, the district court implicitly found the covenant constituted a material term of the Purchase Contract and we find nothing in the

---

[5] Though application of Colorado law was inappropriate for a determination of whether the covenant not to compete was valid, under Utah's choice of law provisions, Colorado law, pursuant to the choice of law provision in Purchase Contract, applies to determine the materiality of the covenant. See Shearson Lehman, 10 F.3d at 1514.

record to indicate the district court clearly erred in so finding.

Because Jon Mitchell breached his covenant not to compete, SFR was excused from performance, *i.e.*, making payments on the note to him. The fact that Jon Mitchell's breach did not cause SFR any damages does not alter our conclusion. Harrison, 577 P.2d at 305 (breach of covenant not to compete presumes irreparable harm despite failure to prove damages); DBA Enter., 923 P.2d at 304; see also North Denver Bank v. Bell, 528 P.2d 413, 414 (Colo. App. 1974)(holding that when a duty to perform by one party is conditioned upon unfulfilled promises to perform by the other, the first party's performance is excused).

**B**

**Whether Steven Heaps is Entitled to Payments on the Note**

We must next consider whether Steven Heaps is entitled to a one-third share of the payments on the promissory note. The district court concluded that Duff Mitchell, Jon Mitchell and Steven Heaps were the intended payees on the note, reasoning that once the sale of EDI's assets was completed pursuant to Purchase Contract, EDI had nothing of value to give for the note; instead, only the three individuals could provide consideration for the note and had orally so agreed. The promissory note states in relevant part:

> SFR, Inc., dba QED, Inc., promises to pay to the order of EDI in Salt Lake City, Utah, $750,000, payable $10,000 per month due at the end of each month. The first payment is due by January 31, 1995, and the final payment is due March 31, 2001.

3 App. at 779. EDI argues that the promissory note is unambiguous that EDI is the sole payee on the note; thus, extrinsic evidence offered to show Steven Heaps is an intended

- 24 -

payee violates the parol evidence rule. We disagree, finding no error with respect to the district court's findings of fact and conclusion of law.

The fact that the note states the payee is EDI does not mean extrinsic evidence is inadmissible to show SFR intended for Duff Mitchell, Jon Mitchell and Steven Heaps to receive payments on the note. Colorado has adopted § 3-110 of the Uniform Commercial Code, C.R.S. § 4-3-110(a) (1996), which provides in relevant part:

> The person to whom an instrument is initially payable is determined by the intent of the person . . . signing as, or in the name or behalf of, the issuer of the instrument. The instrument is payable to the person intended by the signer even if that person is identified in the instrument by a name or other identification that is not that of the intended person.

Id. Section 4-3-110 implies an exception to the parol evidence rule even if a negotiable instrument is clear on its face as to whom the payee is. Here, SFR issued the note and the note was signed by Dean Stauffer on SFR's behalf.[6] Thus, under § 4-3-110(a), Stauffer's intent as to who the payee is controls. The judge found that Stauffer intended the note's payees to be Duff Mitchell, Jon Mitchell and Steven Heaps. 1 App. at 128-29. The district court also found that Duff Mitchell told Stauffer that he, Jon Mitchell and Steven Heaps would share the note proceeds equally. Id. at 129. We have reviewed the district court's finding and evidence relevant thereto and hold there is no clear error. 2 App. at 458, 460-63; 3 App. at 610.

_____

[6]The promissory note here is a negotiable instrument because it has satisfied the requirements of C.R.S. § 4-3-104(a).

## C

## Whether Duff Mitchell is Entitled to Payments on the Note

Third, we consider SFR's cross-appeal on the issue whether Duff Mitchell's antics in creating the sham $550,000 note excuses SFR from making payments to him on the valid $750,000 note. We agree with the district court that Duff Mitchell's actions, while reprehensible, do not excuse SFR from performing on the note. The sham note in no way affected the validity of the original note nor constituted a material breach which would excuse SFR's performance. See Miller v. Yockey, 112 P. 772 (Colo. 1911). The district court found no evidence that the sham note was presented to SFR or detrimentally affected SFR's conduct. Appellee SFR's argument that Duff Mitchell's conduct constituted an "alteration" of the note that excuses performance is without merit. Therefore, we affirm the district court on this issue.

## D

## Attorneys' Fees

Last, we consider Duff Mitchell's claim for attorney's fees. The district court awarded Duff Mitchell $39,753.73 in attorney's fees, $1,400 less than he requested, reasoning the $1,400 in fees represented work done for EDI before Duff Mitchell became a party to the suit.

We review an award of attorney's fees for abuse of discretion. See Mann v. Reynolds, 46 F.3d 1055, 1062 (10th Cir. 1995); Sheets v. Salt Lake County, 45 F.3d 1383, 1391

(10th Cir.), <u>cert. denied</u>, 516 U.S. 817 (1995). We are not persuaded by Duff Mitchell's argument that he should be entitled to recover on the obligation for fees incurred in EDI's defense merely because the district court held that Duff Mitchell, Jon Mitchell and Steven Heaps were the intended payees on the note instead of EDI. EDI and Duff Mitchell have maintained throughout this litigation, both before the district court and before us, that EDI is an entity separate from the three individuals for purposes of the right to receive payment under the note. 1 App. at 28, 78, 124. As stated above, we affirm the district court's rejection of that argument. Duff Mitchell now cannot claim that the attorney fees generated for EDI's benefit before Duff Mitchell became a party in this litigation were solely for his defense as a third party defendant.

Accordingly, the judgment of the district court is **AFFIRMED.**